# Brake *versus* Crider.

1. To entitle the public to a right of way by prescription over unenclosed woodland, it must be affirmatively shown that substantially the same line of travel was continuously used by the public for twenty-one years prior to the Act of April 25th, 1850 (Purd. Dig. 1468), which Act provides that thereafter no such right of way through unenclosed woodland shall be acquired by mere user. If the way once used has been abandoned and a different route selected, or if the line of travel has shifted from one location to another and substantially different one, there is no such continuous user as will justify the presumption of a grant.

2. A. was the owner of a strip of unenclosed woodland, through which the public in travelling from one highway to another had been accustomed to cross by five different roads. The distances between tracks Nos. 1 and 2, 2 and 3, 3 and 4, and 4 and 5 were 65, 57, 33, and about 4 feet respectively. The public had acquired by prescription a right of way in Nos. 1 and 2, but as to the length of time for which the other roads were used and as to the continuity of such use, and as to whether or not these tracks did not constitute substantially one single road, the evidence was conflicting. A. in 1883 built a fence across his tract of

[Brake *v.* Crider.]

land, thus crossing and obstructing all five roads, which fence B. in passing along Road No. 4 tore down.   In an action of trespass *quare clausum fregit* by A. against B., the court charged that if the jury believed that the public had not acquired a right of way in Road No. 4. but had acquired such right in another road in the vicinity, which A. had closed up, B. would not be liable; that if B. with A.'s consent had substituted Roads Nos. 3, 4, and 5 for Nos. 1 and 2 as a thoroughfare, while A. would have the right to obstruct Roads Nos. 3, 4, and 5, he could not do so without leaving open Nos. 1 and 2, and that if he so constructed his fence as to close all the five roads, B. would have the right to remove the fence at No. 4, even if the public had no right of way therein:

*Held*, to be error.   That if B. removed A.'s fence at any point in which the public had no right of way, he was a trespasser and liable as such; that while the maintenance of a nuisance by A. would justify its abatement by B., it would not justify the commission by B. of an independent trespass.

June 11th, 1884.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Franklin county :* Of May Term, 1884, No. 26.

This was an action of trespass *quare clausum fregit,* by John C. Brake against Philip O. Crider, to recover damages for the alleged wrong of the defendant in entering upon the plaintiff's land and tearing down his fences, etc.   The defendant admitted the acts complained of, but set up as a defence that he was crossing the plaintiff's land by a common public highway, which he alleged had arisen by prescription.

The facts of the case with the instructions of the court below assigned as error are fully recited in the opinion of this court.

Verdict for the defendant and judgment thereon.   The plaintiff took this writ of error, assigning as error, inter alia, the answers of the court to the plaintiff's and defendant's third points, as recited in the opinion of this court *infra.*

*F. M. Kimmell* and *Orr & Gillan* for the plaintiff in error, cited: Gentleman *v.* Soule, 32 Ill. 278; Lawton *v.* Rivers, 13 American Decisions 741 ; Reimer *v.* Stuber, 8 Harris 458.

*Stenger & McKnight,* and *John Stewart,* for the defendant in error, cited: Hamilton *v.* White, 1 Seld. 9; Larned *v.* Larned, 11 Metc. 421.

Mr. Justice STERRETT delivered the opinion of the court, October 6, 1884.

In Worrall *v.* Rhoads, 2 Whart. 427, it was held that the continuous and uninterrupted use and enjoyment of a way, even over unenclosed woodland, for over twenty-one years,

was presumptive evidence of a grant; and this continued to be the law until the mischief resulting from the acquisition of such easements became so great as to call for legislative interference. The Act of September 25th, 1850, Section 21, declares, "That no right of way shall hereafter be acquired by user, where such way passes through unenclosed woodland; but, on clearing such woodland, the owner or owners thereof shall be at liberty to enclose the same as if no such way had been used through the same before such clearing or enclosure," &c.: P. L. 572. Rights of way, fully acquired by user before the passage of this Act, and not afterwards abandoned, are of course unaffected by its provisions. But it was not every trespass or successive acts of trespass that previously warranted the presumption of a grant; and in view of the mischief intended to be remedied by the Act, presumptive grants are not favored. To entitle the public to a right of way, by prescription, over unenclosed woodland, it should be affirmatively shown that substantially the same line of travel was continuously used for twenty-one years prior to April 25th, 1850. Nothing short of an uninterrupted use of practically the same route of travel will suffice. If the way once used has been abandoned and a different location selected, or if the line of travel has been shifted from one location to another and substantially different one, just as accident or caprice may have determined, it is not such a continuous use as will justify the presumption of a grant.

It appears that plaintiff owns a woodland lot, containing ten or twelve acres, over which the public were accustomed to pass and repass for a long time prior to 1850. The plot, given in evidence, in connection with the testimony, shows that across the southwesterly line of the lot there were five tracks or roads, numbered 1 to 5, inclusive, which have been more or less used by the public as a near route through plaintiff's woodland from one public highway to another. The distance, on said southwesterly line, between tracks 1 and 2, is about sixty-five feet, between 2 and 3, about fifty-seven feet, between 3 and 4, about thirty-three feet, and between 4 and 5, only a few feet. On the same line plaintiff built one hundred and eighty-six feet of post and rail fence, crossing each of said tracks or roads, thus preventing access to his woodland on that side. Defendant removed the fence at the point where track No. 4 crosses the line, and in that consists the alleged trespass. His defence was justification; that by long-continued use and enjoyment of a way across plaintiff's woodland, prior to April 25th, 1850, the public had acquired a prescriptive right thereto, and hence the removal of the obstruction was warranted. Testimony tending to sustain the defence was

[Brake v. Crider.]

introduced, but plaintiff contended that, under the evidence, there had been no such use of either of the tracks as gave the public a right of way over his woodland; and especially that track No. 4, where the trespass was committed, had not been used for a sufficient length of time prior to April 25th, 1880, to justify the presumption of a grant, and he accordingly requested the court to charge, "If the defendant took down the plaintiff's fences at any one point which was not on the road as used by the public for twenty-one years continuously, prior to the 25th day of April, 1850, he is a trespasser, and must answer in damages to the plaintiff." This point was refused, and in connection therewith the learned judge said: "It is the converse of the position of the defendant which I am about to read and affirm. I have already detailed that notwithstanding the fence was taken down on the road which the public had no right to, yet if they had a right to another road in the vicinity which was closed up, the taking down of the fence, at another enclosed place where a road was, would not involve the defendant in damages."

The defendant's "position," to which the court refers in the foregoing answer, is fully stated in his third point, as follows: "That should the jury find that the tracks designated 1 and 2 on plaintiff's draft (or either of them) were sections of a road used adversely and continuously by the public for a period exceeding twenty-one years next prior to the 25th of April, 1850, and thereafter until within a period of twenty-one years prior to the date of the alleged trespass, and that sections 3, 4 and 5 were, at different periods subsequently to 1856 (the date when plaintiff acquired his title to the land), substituted by the public with the knowledge of plaintiff, and without objection from him, for said sections 1 and 2, the latter, however, remaining open and unobstructed during the entire period, the plaintiff had the right to prevent the further use of tracks Nos. 3, 4 and 5, but only on condition that he left 1 and 2 open and unobstructed for the public. Under such state of facts, if the plaintiff so constructed his fence as to obstruct all these several tracks so as to deny the defendant any road whatever over his land, the defendant had a right to remove the fence at the point he did, and was not bound to open it at the old track in order to pass over." This proposition was affirmed without any qualification.

In thus refusing plaintiff's proposition, and broadly affirming that of defendant, we think there was error. If the jury found, as they might have done, under the evidence, that no right of way had been acquired at the point where the alleged trespass was committed, the defendant had no right to remove the fence, and in so doing he committed a trespass for which

he is answerable in damages. If plaintiff maintained a nuisance by building and keeping up a fence across either of the other tracks over which the public had a right of way, that might have justified the abatement of the nuisance by taking down the fence at that point, but it could not justify the commission of a trespass on another part of his premises where no right of way existed. In other words, the maintenance of a nuisance may justify its abatement, but it can never justify the commission of an independent trespass. The same error pervades portions of the charge covered by the fourth and fifth specifications of error. Nothing that was done since the passage of the Act of 1850 can have the effect of giving the public any other or better right than they may have previously acquired.

> Judgment reversed, and a *venire facias de novo* awarded.