## Becker, Appellant, *v.* Rittenhouse.

318

Argued April 2, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*W. W. Carr,* of *Carr & Krauss,* with him *Irwin P. Knipe,* for appellant.—There was an open, visible, permanent and continuous service or easement of Walton Avenue from Athens Avenue to Lancaster Avenue.

When the Merion Title Company took its mortgage, and the other parties who succeeded to the title from the sale of the mortgage, including defendant, took title, they were directly chargeable with what the record of plaintiff's conveyances showed as to the easement of Walton Avenue: Coleman v. Reynolds, 181 Pa. 317; Transue v. Sell, 105 Pa. 604.

The principle of estoppel does not apply to plaintiff's claim as to easement: Koons v. McNamee, 6 Pa. Superior Ct. 445; Ormsby v. Pinkerton, 159 Pa. 458; Geible v. Smith, 146 Pa. 276; Zell v. Universalist Society, 119 Pa. 390; Overdeer v. Updegraff, 69 Pa. 110; Cannon v. Boyd, 73 Pa. 179.

*Franklin L. Wright,* with him *Williams & Sinkler,* for appellee.—The law is very clear as to the requirement that one claiming an easement must establish definitely and distinctly the nature and course of the easement claimed: Kurtz v. Hoke, 172 Pa. 165; Brake v. Crider, 107 Pa. 210; Arnold v. Cornman, 50 Pa. 361; Kieffer v. Imhoff, 26 Pa. 438; Geible v. Smith, 146 Pa. 276; McClure v. Land Co., 263 Pa. 368; Francies's App., 96 Pa. 200; Liquid C. Co. v. Wallace, 219 Pa. 457; Phillips v. Phillips, 48 Pa. 178; Zerbey v. Allan, 215 Pa. 383.

OPINION BY MR. JUSTICE SCHAFFER, July 1, 1929:

Plaintiff filed this bill in equity to enjoin defendant from erecting a building on Lancaster Avenue in Ardmore within the limits of what he claims to be a private

street laid out by him, known as Walton Avenue, opening at right angles into Lancaster Avenue, when the land now owned by defendant was part of a large tract belonging to plaintiff, the alleged street having been created, so he avers, for the benefit of his, plaintiff's, remaining land and for the owners of other properties along its route purchased from him. The court denied the relief requested and plaintiff has appealed.

The decision of the chancellor was correct as we shall endeavor to demonstrate in as small a compass as possible for an intelligible presentation. The proofs were voluminous, comprising well onto 500 pages in the printed record; on their discussion and in the review of the authorities the chancellor felt compelled to consume more than 50 pages.

In the year 1888 plaintiff acquired a tract of land in Ardmore containing in front on Lancaster Avenue over 400 feet and extending in depth 800 feet to Athens Avenue. In his bill he avers that more than 20 years before the filing thereof, he plotted the tract into lots and laid out a private street for the lot owners called Walton Avenue, 36 feet wide, the middle line whereof began on the southwestward side of Lancaster Avenue at the distance of 124 feet southeast from the line between his property and the adjoining owner to the west, such middle line continuing southwestwardly at right angles to Lancaster Avenue for a distance of 110 feet and thence in a general southwestward direction (the courses and distances the complainant not being able to give) to a point in the middle of Athens Avenue at a fixed distance from a designated property line.

No plan of the lots or street was published nor was it ever recorded. A plan apparently made in 1912 appears among plaintiff's exhibits marked "Plan subject to revision." It shows an avenue 40 feet wide opening into Lancaster Avenue and extending at right angles thereto for 110 feet and thence in the general direction above indicated to Athens Avenue. This proposed street

is not located where plaintiff now claims the street to be and bears no relation to Walton Avenue as he subsequently opened it at the rear of the property into Athens Avenue. Another plan among plaintiff's exhibits, likewise marked "subject to revision," shows the same avenue and in addition a meandering road of varying width to the northwest of it connecting with it about 150 feet from Lancaster Avenue marked "dirt road" which bifurcates towards its western end, one portion similarly marked and the other designated "road over cinders," which apparently is the street as plaintiff now claims it to be. It is inconceivable to us that anyone would lay out a street in such a way to develop the property. These maps lead to the conclusion that plaintiff had not definitely determined down to the year 1912 just what the lines of the proposed street were to be.

Defendant obtained title to the land which he now owns fronting on Lancaster Avenue and extending back to Athens Avenue by grant from the Township of Lower Merion in 1925. It was part of the tract originally owned by plaintiff and on it is located the alleged private street. Title passed from plaintiff in 1918 as a result of the foreclosure of a mortgage for $45,000 given by him to the Merion Title & Trust Company in the year 1916. The land covered by the mortgage was described by metes and bounds but no mention was made of the alleged private street which plaintiff now claims he had laid out thereon prior to the year 1906, ten years before he gave the mortgage.

We will now refer to the physical aspects of the alleged street, summarizing its characteristics as described by the witnesses who testified on that phase of the controversy, from the findings and opinions of the chancellor. The original tract of land owned by plaintiff was undeveloped and was used sporadically as a short cut between Lancaster and Athens Avenues by pedestrians and vehicles when the condition of the ground permitted. The witnesses described the routes taken across the land

as "tracks," as a "trail," "lane," "path," "course," and "track snake fashion." No witness, not even the plaintiff himself, located its route with definiteness. It might well be described as the usual rambling way which persons are wont to establish as a short cut across undeveloped and unfenced land, usable when and where weather conditions permit.

The principal grounds on which plaintiff founds his equity for the relief asked are: (1) That after planning the street, he planted a row of trees on either side of it, but he did not stand by these as evidencing his right to insist upon the streets continuing existence, because without protest he permitted defendant to cut them down; indeed, he went even further and asked for and received the dissevered bodies of some of these silent witnesses of the existence of his contemplated highway and burnt them for firewood. (2) In December, 1915, he sold to Walter E. Witte part of the land at the rear of his tract and extending east from Athens Avenue; it was described as fronting on Walton Avenue, 36 feet wide. This Walton Avenue, as before stated, bears no relation to the alleged Walton Avenue opening into Lancaster Avenue; it lies nothwest of where the latter would be if extended westwardly and the two could be joined only by a deflected connection which, as we have observed, it is difficult to believe any one would lay out. It was provided in the deed to Witte that Walton Avenue was to be opened from Athens Avenue to Lancaster Avenue. Just how it was to run was not set forth. While Witte and those holding title from him might have a claim against plaintiff for failing to give them the outlet, it is difficult to see how they could compel the laying out of a street at defendant's expense, taking part of his property when plaintiff himself has other property fronting on Lancaster Avenue through which access to that thoroughfare could be afforded. It does not appear likely that such a claim will ever be asserted, however, as these property owners have full

access to Lancaster Avenue over improved streets laid out by defendant and none of them has joined in this proceeding. (3) It is contended that defendant and those preceding him in title following the sheriff's sale had legal notice from the record of the Witte deed that Walton Avenue was a street to be opened to Lancaster Avenue. Without determining whether the Witte deed was notice to them at all, there was nothing in it to show where the street was to be laid out and presumptively it would be in a substantially straight line through other property which plaintiff owned and not touching that in question. As it was actually opened from Athens Avenue east 262 feet, it terminated more than 600 feet from Lancaster Avenue. (4) It is claimed for plaintiff that he purchased 60 or 80 tons of cinders with the intention of using them to improve Walton Avenue as he contemplated it. If that was his purpose, it was never carried out, as the cinders were simply piled on the property and there remained as they were dumped. (5) It is pressed upon us that because, when he purchased the property from Lower Merion Township following its advertisement for sealed bids thereon, defendant had notice that the property would be sold subject to the easement of Walton Avenue "possibly extending to Lancaster Avenue," and because this language was carried into his deed defendant was visited with notice of the location of the avenue. This might be true if plaintiff had definitely located it, but as we have heretofore and will hereafter point out, he had not. Plaintiff himself testified that he had never improved the alleged street in any way within 200 feet of Lancaster Avenue. Notice of the alleged easement amounted to nothing unless the easement had an existence in fact. No notice was given of the alleged easement at the sheriff's sale, although plaintiff was present, and none was given to the purchaser or to those following him in ownership, including the township; not until the latter came to sell was any such claim asserted. (6) As to plaintiff's conten-

tion that defendant had further additional notice of an open, visible, permanent roadway extending from Athens Avenue to Lancaster Avenue, the testimony shows otherwise, and the chancellor so found. That plaintiff's property was used by pedestrians and vehicles as a short cut to Athens Avenue is true and that he contemplated establishing a street on it is quite probable, but that he ever did in a way that meant a permanent and fixed location or width, the evidence fails to establish.

There are certain facts and circumstances not heretofore particularly adverted to which stand as a bar against plaintiff's insistence that the street he contends for shall be declared an actual open one. Not only has he failed to give an exact location for that part of the street beginning 110 feet west of Lancaster Avenue, but he also leaves in doubt just where it intersects that highway. In his bill he fixes the center line 124 feet from the property line between him and the adjoining property on the west and in one part of his testimony he fixed it "about 75 feet east of my building," which would indicate a difference of 30 feet in the location of the center line; in a proposal to the government for the location of a post office, he indicated the street at another location; but most significant of all, for advertising purposes he caused a plan of the property to be painted on the side of his building which shows the street located at a point 20 feet from that given in the bill and in his testimony. On the maps he produces the width is fixed at 40 feet. He now says it was to be 36. There could not be an ambulatory location of the street: Kurtz v. Hoke, 172 Pa. 165; Kyper v. Sheaffer, 42 Pa. Superior Ct. 277; Brake v. Crider, 107 Pa. 210; Arnold v. Cornman, 50 Pa. 361. A chancellor could not with certainty, under the testimony, locate the street even at its Lancaster Avenue end; with much less reliance on fact could he the rest of it.

Having made the mortgage on the land in question without mention of the street, plaintiff under the cir-

cumstances of this case was estopped from claiming its existence as against his mortgagee and those who claimed title through the sheriff's sale thereon, including defendant. After it acquired title to the property, the Township of Lower Merion established a public parking space on it for the entire front on Lancaster Avenue, erected posts along this front and so changed the grade that access from that thoroughfare was prevented. Appellant made no objection to these acts and the use of the property hostile to the existence of the alleged street, although it continued for several years.

On the facts, plaintiff is without equity; when they are related to the general principles applying to easements, his case indisputably falls. "The law is jealous of a claim to an easement, and the burden is on the party asserting such a claim to prove it clearly": 19 C. J. 958. "He must show that the user was open and notorious......that the use was continuous and uninterrupted": Ibid. "Three things are regarded as essential to create an easement by implication on the severance of the unity of ownership in an estate: first, a separation of the title; second, that, before the separation takes place, the use, which gives rise to the easement, shall have been so long continued and so obvious or manifest as to show that it was meant to be permanent; and, third, that the easement shall be necessary to the beneficial enjoyment of the land granted or retained. To these another essential is sometimes added,—that the servitude shall be continuous and self-acting, as distinguished from discontinuous and used only from time to time": 9 R. C. L. 757. "The owner of an entire tract of land, or of two or more adjacent parcels, may so employ a part thereof as to create a seeming servitude, or, as it is sometimes termed, a quasi easement in favor of another portion to which the use becomes appurtenant. [Such are called easements by implication.] The tendency of the courts is to discourage implied grants of easements, since the obvious result, especially in urban

communities is to fetter estates and retard building and improvements, and is in violation of the policy of the recording acts. The burden of proof rests with the person asserting it to show the existence of all facts necessary to create by implication an easement appurtenant to his estate": 9 R. C. L. page 754. "To establish a private right of way by prescription, the line of the traveled road must be definite. The practice of passing over land in different directions, however long continued, does not establish a right of way by prescription": Ibid. page 899; Conn v. Pennsylvania Railroad, 288 Pa. 494. To establish it as an easement over defendant's land, the location of the road must be certain, continuous and apparent, palpable and manifest, and obviously permanent in its nature: Kieffer v. Imhoff, 26 Pa. 438; Kurtz v. Hoke, 172 Pa. 165; Brake v. Crider, 107 Pa. 210; Arnold v. Cornman, 50 Pa. 361; Koons v. McNamee, 6 Pa. Superior Ct. 445, RICE, P. J.

The assignments of error are all overruled and the decree of the court below is affirmed, at the cost of appellant.