## Cavany et ux. v. Sherer et ux.

*Charles Matthews, Jr.,* and *Leroy K. Donaldson,* for complainants.

*Orville Brown* and *Gilbert E. Long,* for respondents.

LAMOREE, J., August 29, 1947.—This action is brought by plaintiffs for the purpose of securing a mandatory and permanent injunction against defendants.

Plaintiffs are the owners of 2.44 acres of land, located on the New Castle and Mount Jackson road in North Beaver Township, Lawrence County, Pa. Defendants own and occupy 2.11 acres of land immediately east of plaintiffs' land, on the same southerly side of said highway. It is alleged by plaintiffs that defendants are wrongfully discharging certain waters, polluted and otherwise, from their land by means of

subterranean pipes, both of tile and galvanized iron, under their own land for more than 150 feet in a westerly direction to plaintiffs' land and thence by said pipes to, over and upon plaintiffs' land to the damage and injury of plaintiffs.

An answer on the merits was filed by defendants to the bill of complaint of plaintiffs. Plaintiffs filed a reply to the answer of defendants. Thereafter this matter came to us for hearing. It has been heard by the trial judge without a jury. From the evidence we made the following:

### Findings of fact

1. William C. Cavany and Sadie S. Cavany, his wife, plaintiffs, are the owners of 2.44 acres of land located on the southerly side of the New Castle and Mount Jackson road in North Beaver Township, Lawrence County, Pa., which they purchased in March 1945 from Albert J. Veri and Nancy M. Veri, his wife, for the sum of $1,400. The deed for said conveyance, dated March 21, 1945, was duly recorded on March 22, 1945, in Deed Book, Volume 333, at page 369, in the office for the recording of deeds in and for Lawrence County, Pa. Said land of said plaintiffs is bounded and described in paragraph one of the bill of complaint.

2. Charles R. Sherer and Maude G. Sherer, his wife, defendants, are the owners of 2.11 acres of land located also on the southerly side of the New Castle and Mount Jackson road in North Beaver Township, Lawrence County, Pa., which they purchased in 1928 from Harvey William Sipe and Daisy E. Sipe, his wife. The deed for said conveyance, dated July 27, 1928, was duly recorded on August 23, 1928, in Deed Book, Volume 271, at page 55, in the office for the recording of deeds in and for Lawrence County, Pa. Said land of said defendants is bounded and described in paragraph two of the bill of complaint.

3. Plaintiffs and defendants have a common ancestor in title. Defendants are grantees in the deed aforesaid from said Harvey William Sipe and Daisy E. Sipe, his wife. Plaintiffs' immediate predecessor in title, Albert J. Veri and Nancy M. Veri, his wife, are grantees in the deed from said Harvey William Sipe and Daisy E. Sipe, his wife, dated January 26, 1944, and duly recorded January 31, 1944, in the office for the recording of deeds in and for Lawrence County, Pa., in Deed Book, Volume 328, at page 117.

4. Sometime after 1922 and before 1928, said Harvey William Sipe and Daisy E. Sipe, his wife, then owning and possessing the entire tract of land, which included that of plaintiffs and defendants, placed and installed the subterranean pipes in question.

5. Said pipes carried certain waters and drainage from the brick dwelling house already located upon the land, as well as the overflow from a certain artesian well located a short distance northeast of said dwelling house. These subterranean pipes carrying said waters ran for a great distance entirely under the surface of the land in a westerly and southerly direction to lands far beyond the lands of plaintiffs and of defendants.

6. When the tract of land was subdivided in 1928 by virtue of the conveyance to defendants of the 2.11 acres of land upon which was erected said brick dwelling house, no easement for the pipes in question was expressed in the deed.

7. When the tract of land was further subdivided in 1944 by virtue of the conveyance to plaintiff's immediate predecessor in title, Albert J. Veri and Nancy M. Veri, his wife, of the 2.44 acres of land (now owned by plaintiffs), no easement for the pipes in question was reserved or any way expressed in the deed.

8. The record title disclosed no easement in the land that plaintiffs were about to purchase, and nothing in the deeds indicated that defendants had any rights

therein. Plaintiffs were advised to this effect before they purchased the land by their lawyer who examined the record title and made a lien search in their behalf.

9. Plaintiffs made a physical inspection of the land that they were about to purchase prior to taking title, and the inspection disclosed no tile drain pipe nor iron water pipe running from the dwelling house of defendants to, over and upon such land.

10. There were no apparent marks, or signs, or evidence of any character, which would indicate the existence of any servitude to plaintiffs prior to their purchase of the land, or to any one reasonably familiar with the subject, on an inspection of such land.

11. Defendants never gave plaintiffs actual notice that the land they were about to buy was subject to any servitude or easement.

12. The subterranean pipes and drainage arrangement in fact were not open, apparent or visible.

13. Plaintiffs were innocent purchasers for value of their land, without notice, actual or constructive, of the subterranean pipes and drainage arrangement.

14. On or about June 14, 1946, plaintiffs commenced the erection of their frame dwelling house upon the said land, when during the excavation of the earth for the basement, they discovered two subterranean pipe lines (3½-inch tile waste or drain pipe line and a three-quarter-inch galvanized iron, water pipe line) approximately three feet below the surface of the land. These pipes ran from an artesian, or spontaneously flowing well, and from the multiple family dwelling house upon defendants' land, under the land of defendants for more than 150 feet in a westerly direction, to plaintiffs' land, and thence under plaintiffs' land and through the same, and thence under and through certain other lands far beyond, for a total distance of about one-fourth mile. They were so located

that they passed through plaintiffs' land at the precise location where the cellar for their dwelling was being excavated.

15. Said pipes were so located that they drained into the cellar which had been excavated for the dwelling house of plaintiffs.

16. In order to prevent said waters pouring from said pipes from filling their cellar, plaintiffs were required to pour cement or concrete at and near the wall of their dwelling house, place certain steel rods for reinforcement in the foundation, and to excavate a large hole upon their land near their east line into which such waters might drain.

17. Notwithstanding the efforts of plaintiffs to protect their land from the flow of waters arising on the land of defendants, the same continues to flow intermittently thereon, creating a hazard to health, a nuisance, and otherwise impairing the use and value of the land of plaintiffs.

## Discussion

This case requires some consideration of the law pertaining to easements and more particularly that of easements by implication. The tendency of the courts is to discourage easements by implied grants. The law is jealous of a claim to an easement by implication, and the burden is on the party asserting such a claim to prove it clearly. Moreover, they run counter to the recording acts: Becker v. Rittenhouse, 297 Pa. 317 (1929).

As a general rule, implied easements are restricted to servitudes which are apparent: 17 Am. Jur. 985, §80. A subterranean drain not open to observation is not an apparent use and, where an estate on which such a drain exists is severed, an easement is not impliedly granted or reserved. See 28 C. J. S., Easements, §33.

A leading case is Butterworth v. Crawford, 46 N. Y. 349, 7 Am. Rep. 352 (1871). The principles that rule the case before us are stated as follows:

". . . the rule of law which creates an easement on the severance of two tenements or heritages, by the sale of one of them, is confined to cases, where an *apparent sign* of servitude exists on the part of one of them in favor of the other; or as expressed in some of the authorities, *where the marks of the burden are open and visible.*

"Unless therefore, the servitude be open and visible, or at least, unless there be some apparent mark or sign, which would indicate its existence to one reasonably familiar with the subject, on an inspection of the premises, the rule has no application."

Goldstein v. Hunter, 257 N. Y. 401, 187 N. E. 675 (1931), is a case of similar facts. The New York Court of Appeals held that the purchaser of a house on a unified plot was not entitled to an easement in respect to a main sewer connection as against a subsequent good faith purchaser. The facts of the case disclosed that no physical construction on the property would give notice to a reasonably prudent purchaser of the existence of the drain, and that the subsequent purchaser made a physical inspection of the property prior to acquisition of title, and that the inspection disclosed no sewer drain or pipe running across the property.

Where the quasi easement (in this case the subterranean pipes) was not the subject of a deed, grant or conveyance, duly recorded, and was not open, apparent or visible, defendants could only enforce it against plaintiffs, the subsequent innocent purchasers of the portion of the land sought to be charged therewith, by proving and establishing that plaintiffs were given actual notice that the land they were about to buy was subject to such burden or servitude. See the instructions of the trial judge in Sharpe, admr., v. Scheible, 162 Pa. 341, 342 (1894), which were stated by the Supreme Court to be full and accurate.

All the evidence in the case before us was to the effect that plaintiffs received no actual notice that the land that they were about to buy was subject to an easement or servitude. Defendants made no attempt to question or deny such evidence, and it therefore must be taken as an established fact.

### Conclusions of law

1. Defendants have no easement, express or implied, of any nature whatsoever over or across the land of plaintiffs.

2. The subterranean pipes and drainage arrangement, together with the discharging of the waters therefrom, polluted and otherwise, from defendants' property, toward, to and upon plaintiffs' land, constitutes an unwarranted encroachment upon the land of plaintiffs, a continuing trespass, a nuisance, an interference with, disturbance and destruction of the land of plaintiffs, as well as of their right to enjoyment thereof, for which there is no adequate remedy at law, and accordingly the jurisdiction of equity is appropriate and plaintiffs are entitled to relief by injunction from this unwarranted invasion of their property rights.

### Decree nisi

Now, August 29, 1947, after due consideration of this case, it is ordered, adjudged and decreed as follows:

1. That defendants, Charles R. Sherer and Maude G. Sherer, his wife, be, and hereby are, perpetually enjoined and restrained from discharging and draining waters, polluted or otherwise, from their dwelling house, their well, and their land, located in North Beaver Township, Lawrence County, Pa., to, toward and upon the land of plaintiffs, William C. Cavany and Sadie S. Cavany, his wife, located immediately to the west of the land of defendants in said township,

county and State; and said defendants forthwith shall cause those certain subterranean pipes, both of tile and of iron, located upon their land, but running to the east line of the land of plaintiffs, to be removed, taken up and so changed in location that no waters therefrom in anywise shall be discharged or drain to and upon the land of plaintiffs.

2. That the costs be placed upon defendants, Charles R. Sherer and Maude G. Sherer, his wife.

This decree shall become absolute unless exceptions are filed thereto within 10 days.