## Hopkins, Appellant, *v.* Stoneroad.

*Equity—Equity pleading—Evidence—Responsive answer.*

The answer of defendant, when responsive to the bill, is conclusive, unless contradicted by two witnesses or by one witness and such corroborating facts and circumstances as are equal to the testimony of another witness.

*Licenses—Revocable and irrevocable—Easements.*

Licenses are of two kinds, simple or revocable, and, coupled with a grant, irrevocable. Simple licenses are revocable at the will of the grantor. A license is irrevocable when it is coupled with a grant or when the licensee has, on the faith of the license, spent money in executing works of a permanent character on the land.

*License—Irrevocable licenses—Mines and mining—Drainage—Equity.*

A bill in equity to restrain the use of a drainage drift, will be dismissed where the evidence shows that plaintiffs and defendants were adjoining owners, that the plaintiffs had granted permission to defendant's predecessor in title to construct the drainage drift under plaintiff's land, that this had been done at the expense of several thousand dollars, and in such a way as to drain forty acres of coal belonging to the plaintiffs, that the coal of the defendants had not been exhausted at the time the bill was filed, and that the closing of the drain would cause not only great loss to the defendants, but also to persons who had purchased coal from the plaintiffs.

Argued April 28, 1902. Appeal, No. 127, April T., 1902, by plaintiffs, from decree of C. P. No. 2, Allegheny Co., July T., 1900, No. 23, dismissing bill in equity in case of John Hopkins, Robert D'. Clark, Robert Taggart, Elizabeth I. Taggart, Jane M. Brown and Nancy J. Taggart v. J. T. M. Stoneroad and R. B. Burgan. Before Rice, P. J., Beaver, Orlady, W. W. Porter and W. D. Porter, JJ. Affirmed.

Bill in equity to restrain the use of a drainage drift.

Frazer, P. J., filed the following findings of fact and conclusions of law.

### FINDINGS OF FACT.

1. In the year 1878, the plaintiff, John Hopkins, was one of several tenants in common who owned in fee, inter alia, a tract of land in Collier township, this county, containing ninety-

two acres and fifteen perches, of which the greatest portion was underlaid with coal. That the plaintiff Hopkins represented all of the owners in the management of the land; that adjoining the coal under plaintiffs' land was a body of unmined coal, containing about forty acres, known as the Camp Hill mines, then owned by David Steen & Sons, who were therein carrying on mining operations. In carrying on such operations it became necessary for Steen & Sons to ventilate and drain their mines through the adjoining coal in the Hopkins land, to and upon a portion of the surface lying below the coal stratum; that in the year 1878, Steen & Sons requested permission from Hopkins and his co-owners to drive an entry and construct a drain from the Camp Hill mine through the Hopkins coal to the surface. Permission was at first withheld but afterwards granted; that at about the same time Hopkins and John Taggart, another owner in the land, together with David Steen and his son, William J. Steen, visited the premises of Hopkins and others, and mutually agreed upon the location of the mouth of the proposed entry. At the time permission was given to drive the entry there was no agreement between the parties by which the privilege then granted to David Steen & Sons was limited to the latter persons, or limited for any period of time, or for any particular body of coal, or that the privilege should cease when David Steen & Sons ceased to operate their Camp Hill mines. Relying on the permission so given, David Steen & Sons drove the entry and constructed .the drain therein and incurred and paid the expense connected therewith, to the amount of about $6,000; that since the completion of the drain water has been continuously flowing through the same, out to the surface of the Hopkins land, and when the Hopkins coal is opened for the purpose of being mined, the entry thus constructed will be available for the purpose of draining in the neighborhood of forty acres of that coal.

2. That the Camp Hill mines of David Steen & Sons, and all mining rights connected therewith, including such rights as David Steen & Sons had in the entry and drain through the coal of plaintiffs, were purchased by the defendants, who, since the filing of this bill. have conveyed the same to the Carnegie Coal Company, which company is now using portions

of the entries of the mines in connection with the mining of other adjoining coal which they own; and, in so doing, have been at great expense in the installation of electric mining machines, and the erection of improvements, are now employing 250 miners, and are shipping by rail on an average of from twelve to fifteen tons of coal per day; that the entry through the Hopkins coal is reasonably necessary, not only for the drainage of the mines of defendants, but also for their ventilation; that the defendants saw the entry through the Hopkins coal before they acquired title to the Camp Hill mines, and the existence of the entry was an element inducing them to purchase those mines; that there remains in the Camp Hill mines about three acres of unmined coal, together with the ribs and supports, which coal and ribs and supports, the Carnegie Coal Company intends taking out and marketing, after having mined the coal owned by them in adjoining properties.

3. That prior to the filing of the bill in this case, the plaintiff Hopkins and his tenants in common sold and conveyed all the coal underneath their land, above described, to the Pennsylvania Mining Company, and in connection therewith granted to that company the right to drain and ventilate the coal on the surface of the land, both above and below the crop of the coal.

4. That the plaintiff, Robert D. Clark, has farmed the surface of the Hopkins property, as a tenant, from year to year, since 1870.

5. That the Camp Hill mines contain no accumulation of stagnant, sulphurous and poisonous waters, as alleged in plaintiffs' bill, but by reason of the deposit of earth at the mouth of the drain contain an accumulation of sulphurous water usually found in coal mines, which water can readily be removed without materially damaging plaintiffs' land, by opening and repairing the entry in dispute; that the entry is in good condition, but needs to have removed therefrom accumulations of earth at several points, particularly at its mouth, which have fallen from the roof and sides, and which can be removed without either unreasonably increasing the flow of water from the mine, or the burden upon the lands of the plaintiffs.

6. That the water flowing from the entry to the Camp Hill

mines flows upon a portion of the Hopkins surface, through which there has been from a time antedating the construction of the entry a surface drain running through the Hopkins land into adjoining land of Wrenshall, and thence to a run, which drain is at present somewhat out of repair, and to a considerable extent clogged by the accumulation of earth and débris; that the expense necessary to put this drain in proper condition to carry off all water discharged from the entry to the mine would be inconsiderable.

7. The plaintiff, John Hopkins, and his tenants in common, never undertook to revoke the license granted to David Steen & Sons, and never instituted proceedings with respect thereto until about the time of filing the bill in this case, which was subsequent to the sale of their coal to the Pittsburg Mining Company, and also subsequent to the purchase by defendants of the Camp Hill mines and the Dorrington coal.

8. That about the year 1891 David Steen & Sons ceased to mine coal from their Camp Hill mines, and from that time until their purchase by the defendants the mines remained closed.

9. That in the year 1900 the defendants purchased and began to mine 130 acres of coal, known as the Dorrington coal, adjoining the Camp Hill mines, no part of which had ever been owned by David Steen & Sons, and thereupon undertook to open up the entry upon the Hopkins property, and now seek to use the same for drainage of the Dorrington coal as well as the Camp Hill coal, and also for the purpose of supplying air to the miners working therein.

10. That at the time of making the agreement under which the entry was driven, David Steen & Sons were negotiating for the purchase of all or a part of the Dorrington coal, now owned by the plaintiffs, intending to mine and take out the same through the Camp Hill mines. These negotiations, however, were never finally concluded.

11. That the water which now flows, and will flow, out of the drain through plaintiffs' property will flow for a short distance over the bottom land of plaintiffs to the land of ———— Wrenshall, and thence over Wrenshall's property to a creek.

### CONCLUSIONS OF LAW.

1. That the license granted to David Steen & Sons was not

merely a license to exist during the mining of the coal then included in the Camp Hill mines, but was a license to drain and ventilate any coal mined in connection with or through those mines.

2. That the license so acquired by David Steen & Sons, they having expended large sums of money in constructing the entry through the Hopkins coal to their Camp Hill mines, was intended to be of a permanent and continuing nature, and irrevocable so long as the same should be reasonably necessary in the use of the Camp Hill mines, in either removing the coal then included in those mines or other coal taken out through them ; that the license so acquired was assignable, and was assigned by David Steen & Sons to defendants, and by defendants to the Carnegie Coal Company.

3. That the plaintiffs are not entitled to the relief prayed for, and that the bill should be dismissed at their cost.

*Error assigned* was decree dismissing the bill.

*Galen C. Hartman,* for appellant.—There can be no question that the rights David Steen & Sons had in this water course were granted by a mere verbal license. And a mere verbal license passes no interest, only makes an act lawful which without it would be unlawful: Washburn v. Gould, 3 Story, 162; Dark v. Johnston, 55 Pa. 164.

A licensee may abandon or release. He cannot substitute another to his right: Prince v. Case, 10 Conn. 375, 381; Jones on Easements, secs. 68, 74; Nunnelly v. Southern Iron Co., 94 Tenn. 398–409.

A parol license to make a water course on licensor's land is revocable at pleasure: Jackson v. Babcock, 4 Johnson, 418; Baldwin v. Taylor, 166 Pa. 507.

When all the coal or minerals sold have been removed, the rights of the owner of them ceases and the surface owner resumes possession of the whole soil to the center of the earth, and can prevent the use of it for working the minerals on an adjacent lot: Park Coal Co. v. Cummings, 7 Leg. Gaz. 149; Lillibridge v. Lackawanna Coal Co., 143 Pa. 293: Stewart v. North Western Coal & Iron Co., 147 Pa. 612; Jones on Easements, sec. 79; Chartiers Block Coal Co. v. Mellon, 152 Pa.

286–297; Barringer and Adams, Laws of Mines and Mining in U. S. 145.

Whatever may have been or may now be the rights of David Steen & Sons, it is not for the benefit of David Steen and Sons, nor any land or coal ever owned by them, nor for the original purpose for which the license was granted, that the right to use the drain is now sought; and in that view of the facts, this case is ruled over by the case of Webber v. Vogel, 159 Pa. 235.

In Fentiman v. Smith, 4 East, 107, Lord ELLENBOROUGH stated that the right to have water pass over the lands of another by a tunnel could not be acquired by parol license, and this doctrine has been affirmed in Lawrence v. Springer, 49 N. J. Eq. 289; Pitkin v. Long Island R. R. Co., 2 Barb. Ch. 221; Dolittle v. Eddy, 7 Barb. 74; Wiseman v. Lucksinger, 84 N. Y. 31; Sweeney v. St. John, 28 Hun, 634; Brown v. Woodworth, 5 Barb. 550; Babcock v. Utter, 1 Keyes, 397; Day v. New York Central R. R. Co., 31 Barb. 548; Thompson v. Gregory, 4 Johns. 81; Miller v. Auburn, etc., R. R. Co., 6 Hill, 61; Fitch v. Seymour, 9 Metcalf, 462; Hays v. Richardson, 1 Gill. & J. 366; Thomas v. Sorrell, Vaughan, 330.

*C. P. Orr*, of *Lazear & Orr*, with him *Murphy & Hosack*, for appellee.—The doctrine of irrevocable licenses still exists in Pennsylvania, and where a man has expended money upon the lands of another in a permanent improvement, or in the creation of a valuable appurtenance to his own land by the invitation or permission of the owner of the lands in which the the money is expended, our courts have always held that it is against equity and good conscience to permit the person who has induced such expenditure to revoke the license at his will. There is a long line of cases in Pennsylvania to this effect, among which are: LeFevre v. LeFevre, 4 S. & R. 241; Rerick v. Kern, 14 S. & R. 267; McKellip v. McIlhenny, 4 Watts, 317; Swartz v. Swartz, 4 Pa. 553; Pierce v. Cleland, 133 Pa. 198; Lacy v. Arnett, 33 Pa. 169.

The inference of abandonment of a right from a nonuser is not applicable to the case of mines: Seaman v. Vawdrey, 16 Vesey, Jr. 392.

But the entry having been driven by the consent of the

plaintiffs, it exists and connects with the Steen mines, which are now the property of the Carnegie Coal Company. Therefore we insist that the latter could not be restrained from permitting the collection and flow through the entry of subterranean water which would necessarily flow from its mines in the operation thereof in an ordinary way: Horner v. Watson, 79 Pa. 242; Penna. Coal Co. v. Sanderson, 113 Pa. 126; Meixel v. Morgan, 149 Pa. 415.

The plaintiffs having permitted the entry to be driven are without any standing in equity to prevent its use, because the laws of Pennsylvania authorize the ventilation and drainage of coal mines through adjoining coal and lands, when damages have been paid or secured according to law: Act of April 4, 1863, P. L. 293; Act of February 18, 1870, P. L. 197; Act of June 30, 1885, P. L. 205.

The benefit to the plaintiffs, if any at all can arise to them by granting the injunction prayed for, is so entirely disproportionate to the injury to the respondents and their grantee, that the plaintiffs are not entitled to maintain their bill: Becker v. Lebanon, etc., Electric Ry. Co., 188 Pa. 484; Richards's App., 57 Pa. 105; Wahl v. Methodist Episcopal Cemetery Assn., 197 Pa. 197.

That even if the license granted to David Steen & Sons was revocable, as insisted upon by the plaintiffs, yet because the plaintiffs did not attempt to exercise the power of revocation until after the rights of the defendants had intervened, equity will not grant relief. This proposition seems to be sustained by reason, as well as by the case of Orne v. Fridenberg, 143 Pa. 487.

OPINION BY BEAVER, J., October 13, 1902:

It may be seriously doubted whether the testimony of the plaintiffs, the appellants here, in any sense overcame the defendants' answer which was entirely responsive to the bill and set forth, with great particularity the facts, as they claimed them. "The answer of defendant, when responsive to the bill, is conclusive, unless contradicted by two witnesses or by one witness and such corroborating facts and circumstances as are equal to the testimony of another witness:" 6 P. & L. Dig. of Dec. 8892.

The conclusions of law, of which the appellants complain, as embraced in the thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, eighteenth, nineteenth and twentieth assignments of error, necessarily followed from the findings of fact which are complained of in the first twelve assignments. After a careful reading of the testimony more than once, we are unable to convict the trial judge in the court below of error in any of his findings of fact. Hopkins, the plaintiff, with whom the agreement with David Steen & Sons, under whom the defendants claim, was made, is the sole witness as to the terms of the original grant under which the entry or drainage drift now sought to be closed, or rather prevented from being opened, was driven. His memory, as he distinctly admits, is unreliable. He says : " It is a good many years ago and I want to be just right, if I could, but I have forgotten some of it I think in the meantime." His testimony relates rather to the conclusions at which he arrived and which he maintains than to the conversation which constituted the agreement.

He was contradicted as to material parts of his testimony (*a*) by William J. Steen, who was one of the parties with whom the agreement was made and who was present at a conversation covering the agreement and what was contained in it, after the first conversation between the plaintiff, Hopkins, and David Steen ; (*b*) by one of his cotenants, to whom he communicated the terms of the agreement with David Steen & Sons, soon after it was made ; (*c*) by the action of Steen & Sons who, immediately after the agreement, expended some $6,000 in digging and supporting the entry through the appellants' land, which expenditure is inconsistent with the plaintiffs' contention.

1. Under the facts, as found by the trial judge in the court below, all of which are based upon and clearly justified by the testimony, the drainage drift was located by the original parties to the license at a point where the drift, when driven, would drain some forty acres of coal belonging to the plaintiffs but since sold to third parties. The plaintiffs, therefore, received a valuable consideration for the grant of the license.

2. The parties to whom the license was granted unquestionably expended a large amount of money upon the faith of it. There is no contradiction of the testimony that $6,000 was

expended in driving and properly supporting this entry or drift.

3. The coal upon the original tract owned by the parties to whom the license was granted has not been exhausted. Not only are the pillars and supports not yet withdrawn, but there is a corner of the coal, estimated to contain about three acres, still remaining.

The license granted by the plaintiffs, the owners of the land, to David Steen & Sons was, therefore, under our cases in Pennsylvania, clearly irrevocable, at least so far as the coal owned by David Steen & Sons and since conveyed to the defendants was concerned.

Licenses are of two kinds, simple or revocable, and, coupled with a grant, irrevocable. Simple licenses are revocable at the will of the grantor. A license is irrevocable when it is coupled with a grant or when the licensee has, on the faith of the license, spent money in executing works of a permanent character on the land. In some states even parol licenses, without consideration, are held irrevocable when executed on the ground of equitable estoppel: 2 Bouvier's Law Dic. 222. Pennsylvania is one of the states which holds a license irrevocable when executed, particularly when money has been expended upon the faith of it: Lacy v. Arnett, 33 Pa. 169. The general principles governing licenses and their irrevocable character by equitable estoppel are well stated in the syllabus of Baldwin v. Taylor et al., 166 Pa. 507. It is needless to enter into any general discussion upon this subject or to multiply authorities.

It does not seem to us that the plaintiff comes into court with such a case as justifies equitable relief. He who seeks equity must do equity. The permanent closing of the drain, the opening of which is sought to be restrained by the bill in this case, would work gross inequity in all directions. The defendants, who purchased Steen's rights, with the drift or entry in plain view, would be prevented from draining and ventilating their mines, except by the expenditure of large amounts of money in sinking shafts and using pumps, in which event the water must flow over some one's land. The purchasers of the coal from the plaintiffs, who own the land, through which the entry was driven, would also be deprived of its use. The accumulations of water in the drift, if the

mouth of it were closed, must find outlet somewhere by percolating through the soil and, inasmuch as it is apparent that, even before the entry was driven, the water found its way over the lands of the plaintiff, no harm can be done by concentrating it and discharging it through a drain to the creek. Upon all grounds, the court below was clearly justified in holding the license irrevocable, under the conditions now existing and the facts as found, and in dismissing the plaintiffs' bill.

We have discussed this question principally from the standpoint of the plaintiffs in the bill, who are the owners of the land. If the tenant is at any time specially injured, he has a complete remedy at law.

The decree of the court below is affirmed and the appeal dismissed at the cost of the appellants.