# Thompson *versus* McElarney.

1. A license for the enjoyment of certain privileges in land obtained under an executed verbal contract founded upon a sufficient consideration, is irrevocable by the licensor or those claiming title in the land under him.

2. T., who was preparing to build a saw-mill on a site selected by himself, at the request of B. changed his plan and agreed to build his mill at a point chosen by B., and agreed at the same time to give B. possession of a strip of land required to straighten B.'s lines (upon which B. wished also to move a small house belonging to him), and to saw B.'s lumber at a price below the market rates; B., in return, agreed to give T. the right to build a tramway across his (B.'s) land, and to throw the waste from the mill into a stream which ran through B.'s land. This contract between them was verbal; it was fully executed by both parties. B. afterwards died. Some years afterwards, McE., the vendee of B.'s heirs, brought an action against T. for damages caused by the deposit of waste from B.'s mill thrown into the stream. *Held*, that the right acquired by B. was a license and not an easement: *Held* also (reversing the court below), that the license in B. to throw the waste from the mill into the stream was irrevocable.

May 24th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas of *Centre county* : Of May Term 1876, No. 74.

Case by Terence McElarney against John J. Thompson, to recover damages for the flooding and washing of his land and the deposit of sawdust thereon. The facts appear in the opinion of the court. The agreement therein mentioned between Thompson and Beckwith was verbal. After verdict and judgment for the plaintiff below, McElarney, the defendant below, took this writ

[Thompson v. McElarney.]

of error, assigning for error that part of the charge given in the opinion of the court.

*McAllister* and *Beaver*, for plaintiff in error, cited the cases given in the opinion of the court.

*Alexander* and *Bower* (with them *D. F. Fortney*), for defendant in error.—The license given by Beckwith was revoked by his death: Bridges *v.* Purcell, 1 Dev. & B. 492; Prince *v.* Case, 10 Conn. 375; Foot *v.* N. H. & N. Co., 23 Id. 214. The notice given to Thompson by McElarney at the commencement of the injuries complained of was a revocation of the license, if not revoked before: Mumford *v.* Whitney, 15 Wend. 381; Dark *v.* Johnston, 5 P. F. Smith 164. The plaintiff's cases may all be distinguished, as they were all cases where money was expended upon the faith of the license.

Mr. Justice WOODWARD delivered the opinion of the court, October 9th 1876.

In the year 1862, John J. Thompson, the defendant below, was preparing to build a saw-mill on his land along Laurel run in Bald Eagle Valley, and had selected the site for its erection. Clement Beckwith, then the owner of the property now belonging to the plaintiff below, had laid out the village of Port Matilda, and urged the defendant to build the mill in the neighborhood of this village, at a point lower down the run than that originally selected. The defendant objected on the ground that his access to the railroad would be made difficult, and that he would be unable to dispose of the waste resulting from the manufacture of lumber. These objections were removed by an agreement finally made between the parties stipulating that the defendant should erect the mill near Port Matilda, should surrender a strip of land which Beckwith wanted to enable him to straighten his lines and to remove a small house he owned, and should saw Beckwith's lumber at a dollar a thousand less than the current price; in consideration of which Beckwith agreed to give the defendant the right of way for a tramway to the railroad, and the privilege of casting his sawdust into the stream which flowed for some distance over Beckwith's property. This agreement was carried into effect. The mill was erected by the defendant, the tramway built on Beckwith's land to the railroad, and the lumber of Beckwith was thenceforth sawed at the stipulated price. Beckwith took possession of the strip of land surrendered by the defendant and moved his house upon it. Throughout his lifetime he acquiesced in the deposit by the defendant of the sawdust and refuse from the mill, and took precautions to keep the stream clear by cutting away the drift caused by the accumulation of logs and refuse lumber in Bald Eagle creek along his land below the mouth

[Thompson *v.* McElarney.]

of Laurel run, a tributary of the creek. After the death of Beckwith, one of his sons sold the land on which the drift had accumulated to the plaintiff, who subsequently took no steps to remove the obstructions. Sawdust was floated into the crevices of the drift, forming a dam in the stream, and during a flood the land of the plaintiff was overflowed, and sawdust was carried and deposited upon its surface. To recover damages for this injury, the plaintiff, denying the right of the defendant to cast the refuse of the mill into the stream, brought this action.

No essential facts relating to the original agreement or the acts of the parties under it were in dispute. The question submitted to the jury was "whether the injuries alleged to have been done to the land of the plaintiff were caused by the sawdust having been thrown into the stream by the defendant. If they were," the court charged, "then the plaintiff is entitled to be compensated in damages for the injuries sustained." The first assignment of error has not been pressed. The second error is assigned to that portion of the charge in which the court said : "If the right acquired by Thompson from Clement Beckwith was a license, the death of Beckwith, which occurred prior to the commission of the acts complained of by the plaintiff, would have revoked it, and the right of Thompson to throw the sawdust into the stream would have been terminated. If it was an easement, it could not be created in any other way than by grant or prescription. It is well settled that an easement cannot exist in parol, and as there has been no uninterrupted and exclusive user and enjoyment of said easement for a period of twenty-one years to give title by prescription, we are of the opinion that the defendant's second ground of defence cannot prevail." The jury were not permitted to ascertain what the exact character of the agreement between Beckwith and the defendant was. That was unnecessary if the legal view expressed by the court was sound throughout. But if they were in error in ruling that the death of Beckwith extinguished the defendant's rights, it may be that the jury should have been instructed to decide whether the agreement had created an actual license, or had amounted only to a parol grant of an easement. There is nothing, however, in the exigencies of the case to require a present decision of the question. Treating the transaction as having conferred on the defendant a simple incorporeal right, and as having, for his benefit, subjected Beckwith's land to a mere servitude, the ruling of the court was possibly right. Hess *v.* McCauley, 3 P. F. Smith 206, at least is an authority for the doctrine, that the grant of an easement, where no principle of estoppel is applicable, cannot rest in parol ; that the grant is revocable even where a consideration has been paid, and that the remedy for a breach of the contract is by action. The material inquiry now is as to the accuracy of the instruction that, in any event, Beckwith's death extinguished the defendant's rights.

[Thompson *v.* McElarney.]

The admitted facts clearly show that a contract upon sufficient consideration was made between these parties, and that the contract was executed. The defendant built his mill at the point suggested by Beckwith. He surrendered the strip of land stipulated for, and Beckwith took possession of it and moved his house upon it. The agreement by the defendant to saw Beckwith's lumber at a minimum price, and the agreement for the right of way for the tramway, were carried out. And the right of the defendant to deposit sawdust in Laurel run, to be carried thence into Bald Eagle creek, was exercised by the defendant and recognised by Beckwith as long as he lived. The only interests affected by this contract were those of Beckwith and the defendant. Beckwith had the rights of a riparian owner in the water flowing through this land. He agreed to surrender and transfer to the defendant a portion of those rights on stipulated conditions. The defendant changed his plans, and made the necessary expenditures in the erection of his mill and building his tramway to the railroad on his faith in the agreement of Beckwith, that he should have the undisturbed use of the water of the stream for a purpose for which both parties knew that use to be indispensable. Nothing appears to indicate that the mill was designed to be other than a permanent structure, and if it was to be permanent, it would seem to follow that the agreement for the disposition of the lumber refuse was to be perpetual. While technically it may be that the nature of the transaction was one for the ascertainment of a jury, it is not doubted that the facts presented by the record established a license and not an easement.

As a license, the authorities on the subject prove that it was irrevocable. In Le Fevre *v.* Le Fevre, 4 S. & R. 241, where a deed had been executed, conveying a right to a watercourse through the granted land by courses and distances, it was decided that a verbal agreement entered into between the parties for their mutual accommodation, altering the route of the watercourse, could be enforced provided the agreement had been carried into effect. In Rerick *v.* Kern, 14 S. & R. 267, it was held, that if a parol license be given, without consideration, to use the water of a stream for a sawmill, in consequence of which the grantee goes to the expense of erecting a mill, the license cannot be revoked at the pleasure of the grantor; and if he divert the water to the injury of the grantee, the latter may maintain an action against him. In delivering the opinion in that case, Judge GIBSON said: "A right under a license, when not specially restricted, is commensurate with the thing of which the license is an accessory. Permission to use water for a mill, or anything else that was viewed as a permanent erection, will be of unlimited duration, and survive the erection itself, if it should be destroyed or fall into a state of dilapidation. Having had in view an unlimited enjoyment of the privilege, the grantee has purchased by the expenditure of money a right indefinite in point of

1 NORRIS—12

duration, which cannot be forfeited for non-user, unless for a period sufficient to raise the presumption of a release." Both these cases prove that the use of the water of a stream may be made the subject of a license by agreement, and in neither of them were the purpose and method of the use more directly indicated than they are indicated here. The rule of Le Fevre *v.* Le Fevre and Rerick *v.* Kern was followed in Swartz *v.* Swartz, 4 Barr 353, and in Ebner *v.* Stichter, 7 Harris 19. In the course of the opinion in Swartz *v.* Swartz, it was said that the principle of Rerick *v.* Kern was, that the revocation of the license would be a fraud, and that to prevent it, a chancellor would turn the owner of the soil into a trustee *ex maleficio.* Huff *v.* McCauley, 3 P. F. Smith 206, was decided on its peculiar facts. The judgment was affirmed on the ground that the verdict had established either that the agreement alleged had not been made or that there had been no expenditure under it.

The same rule has been long, and it is believed uniformly, recognised in England. It was held in Taylor *v.* Waters, 7 Taunton 374, that a beneficial license to be exercised upon land may be granted without deed and without writing; and that a license to be exercised upon land for twenty-one years, granted for a valuable consideration, and acted upon, cannot be countermanded. The judge who delivered the opinion referred to Ward *v.* Lake, Sayer 3, as deciding that a license to stack coals on defendant's close for seven years cannot be revoked at the end of three. The case of Liggins *v.* Inge, 7 Bing. 682, in its principles strongly resembles this. The plaintiff's father, by oral license, permitted the defendants to lower the bank of a river, and make a weir above the plaintiff's mill, whereby less water than before flowed to the mill. It was held, that plaintiff could not sue the defendants for continuing the weir. "We consider the license," said Tindal, C. J., in entering the judgment, " to be simply an acknowledgment, on the part of the plaintiff's father, that he wanted the water no longer for the purposes of his mill, and that he gave back again and yielded up, so far as he was concerned, that quantity of water which found its way over the weir which he then consented should be erected by the defendants. And we think after he has once clearly signified such relinquishment, whether by words or acts, and suffered other persons to act on the faith of such relinquishment, and to incur expense in doing the very act to which his consent was given, it is too late then to retract such consent, or to throw on those other persons the burden of restoring matters to their former state and condition." He said further: "This is not a license to do acts which consist in repetition, as to walk in a park, to use a carriage-way, to fish in the waters of another, or the like; which license, if countermanded, the party is put in the same situation as he was before it was granted; but this is a license to construct a work which is attended with expense to the party using the license; so that after the same is

[Thompson *v.* McElarney.]

countermanded, the party to whom it was granted may sustain a heavy loss. It is a license to do something that, in its nature, seems intended to be permanent and continuing." The cases of Winter *v.* Brockwell, 8 East 308, Taylor *v.* Waters, *supra*, and Hewlins *v.* Shippam, 5 B. & C. 221, were referred to as decisive authorities in support of the judgment.

The ground was taken by the plaintiff's counsel at the argument that nothing was done by the defendant on the faith of the agreement, and that the rule of the cases quoted could therefore have no application. It was said that "Thompson proposed to build the mill at all events, and did build on his own land. The mill could be enjoyed as well and be of as much use to him at one place as at the other." That is hardly so, for the change caused the very embarrassment in disposing of the mill waste against which it was the object of the agreement to provide. Suppose a man having selected a site for a building, changes it and builds his house adjoining that of a neighbor at the latter's invitation. In doing this he closes up the windows on one side of the neighbor's house. Is it possible that at the neighbor's death his heir or alienee may enforce the destruction of the builder's house by setting up the doctrine of ancient lights? Or suppose the offered use of a right of way were the motive for the change. Could the neighbor's heir or alienee oust the builder from the enjoyment of the right because he possessed by the agreement only an easement resting in parol grant? In reference to the argument, it is enough to say that the defendant changed the location of his mill, and placed it where he did not want it, at the persistent instance of Beckwith; that his objections to the change were founded on the inconvenience of access to the railroad from the new site, and the difficulty of disposing of the sawdust; and that the use of the land for the tramway, and the right to deposit the sawdust in the stream offered by Beckwith, were the motives that induced him to consent. The same reason that would justify the revocation of the license to use the water, would justify the revocation of the license to maintain the tramway. The entire agreement has been executed, and every advantage he sought in making it having been gained by Beckwith, the rights derived by the defendant from it became absolute and irrevocable.

Judgment reversed and *venire de novo* awarded.