# Livengood, Appellant, *v.* Stauffer.

*Estoppel—Silence—Adverse title—Mines and mining—Drainage.*

One who knowingly suffers another to purchase land, under an erroneous opinion of title, without making known his adverse claim, and accepts for himself a part of the purchase money, shall not afterwards be permitted to assert his right against such purchaser. Silence will postpone a title when one knowing his own right should speak out, and one led by such silence ignorantly and innocently to rest on his title, and invest money on the faith of it, without timely warning, will be protected by estoppel.

Where a member of a limited partnership association is active in installing a system of drainage for its coal mines through neighboring coal which it does not own, and subsequently upon the sale of the coal mine participates in the proceeds of the sale, and it appears that he had shortly before this purchased the surface over the coal under which the drain was constructed, he will be estopped from denying to the company who purchased the coal mine the right to drain under the surface to which he had acquired title.

Argued April 16, 1906.  Appeal, No. 131, April T., 1906, by plaintiff, from decree of C. P. Fayette Co., No. 400, in equity, dismissing bill in equity in case of A. S. Livengood v. Joseph R. Stauffer, James W. Wiley, Stauffer & Wiley, H. C. Frick Coke Co., American Sheet Steel Co.   Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY and HEAD, JJ. Affirmed.

Bill in equity for an injunction.   Before REPPERT, P. J. The facts are stated in the opinion of the Superior Court.

*Error assigned* was decree dismissing the bill.

*F. P. Rush*, with him *W. J. Johnson*, for appellant.—Mr. Livengood, the plaintiff, having acquired the rights of Sherricks, is only bound by the same estoppels they were bound by. During their ownership, nothing Livengood would do or say could affect the title he obtained from the Sherricks.  Now the matters alleged by defendants as estopping Livengood, were things he did before he acquired title.   Even if Livengood were a joint trespasser with defendants, in turning the additional water upon his land, it could not estop him asserting all his legal rights of ownership after he acquired the title, for a trespass establishes no rights in a trespasser: County of Susquehanna v. Dean et al., 33 Pa. 131.

As Stauffer & Wiley have known all the time that they were trespassing, we cannot see how knowledge on part of plaintiff, even if it existed, would be material.   But if it is material, then the defendants, on whom the burden lies to prove the facts necessary to create an estoppel, have failed in their proof: Hill v. Epley, 31 Pa. 331; Com. v. Moltz, 10 Pa. 527; Richards v. Buffalo, etc., Railroad Co., 137 Pa. 524; Woods v. Wilson, 37 Pa. 379; Garvey v. Refractories Co., 213 Pa. 177; Bushnell v. Scott, 21 Wisconsin, 451; Woodward v. Webb, 65 Pa. 254.

*Nathaniel Ewing*, with him *George D. Howell*, for appellees.— An owner cannot invoke protection against an infirmity in his title which he has aided to create: Lewis v. Carstairs, 6 Wharton, 193; Pettebone v. Beardslee, 3 Kulp, 406; Oil Well Packer Co. v. Jarecki Mfg. Co., 157 Pa. 342.

OPINION BY PORTER, J., October 5, 1906:

The plaintiff is the owner of ninety-two acres of land in Fayette county, which is subject to the mining rights of the defendants Stauffer & Wiley, who own the coal and other minerals underlying thirty-three acres of said tract and have for many years operated a mine in said coal, known as the Home Works, in connection with a coke plant. The coal and land were both formerly owned by Jacob Sherrick, who in 1873 opened the mine and built the coke works and continued to operate them for some time. Sherrick adopted as the plan for freeing the mine from water a drain some 300 or 400 feet long extending out, under and through his land to a run on the surface of the Frick Coke Company's land. This drain was covered except some thirty or forty feet at the lower end. The coke and coal works, "together with the right to mine, extract, remove and take away the entire amount and body of said coal and other minerals without being bound or required to leave any part thereof for the support of any part of said lands or the surface thereof in any manner whatsoever, and without being in any way liable for any damage or injury which may be done to said lands or to any water or water courses therein or thereon, or to anything growing on said lands or to any buildings erected or which may hereafter be erected thereon, by the mining or extracting or removal of the whole of said coal and other minerals as aforesaid, together with the right to make all such openings as may be desirable for the ventilation and drainage of the mines or pits used in the mining of said coal or other minerals, and to drain said mines or pits on or through any lands of the said grantor without being in any way liable for any damage or injury which may be done to said lands or to any water or water courses therein or thereon," were granted and conveyed by Sherrick to Joseph R. Stauffer in 1881, and in the same year Stauffer conveyed an undivided interest therein to James W. Wiley, and since then and until the present time the firm of Stauffer & Wiley have continued to operate the mine and the Home Coke Works. In 1895 or 1896, the wooden box drain originally constructed by Sherrick was taken up and a twelve-inch tile drain laid upon the same line by Stauffer & Wiley. In the fall of 1901 Stauffer & Wiley took up the twelve-inch tile drain

and deepened the ditch upon the same line, it being their intention to replace the tile drain taken up with a twenty-four-inch tile drain. When the teamsters began hauling the twenty-four-inch tile for the drain, the plaintiff refused to permit them to cross his land, and the construction was somewhat delayed. The twenty-four-inch tiles were finally placed in the ditch on the line of the original Sherrick drain, and the ditch was filled and the tile covered the entire distance through plaintiff's land to a depth sufficient to permit of farming operations, in November, 1902, about the time this bill was filed.

The bill conceded the right of Stauffer & Wiley to drain the Home Works mine through the lands of the plaintiff, but averred that the waters from coal mines of the American Sheet Steel Company and the H. C. Frick Coke Company were also being conducted through the Home mine and discharged by the drain in question through plaintiff's land, and prayed that a permanent injunction be granted to restrain the defendants from continuing and maintaining said trespass. The defendants filed an answer to which the plaintiff filed a replication, and evidence was heard by the court below upon the issue thus raised. The court below found that the water from the mine now owned by the American Sheet Steel Company had been discharged through this drain since 1890 and that the water from part of the mine of the H. C. Frick Coke Company had been discharged in the same way since 1898, but that under the facts as found by the court the plaintiff was estopped to question the right to so discharge said waters.

The court found as a fact that the natural drainage of the mine of the American Sheet Steel Company and that part of the Frick Coke Company mine which passed through the drain in question was through the Home mine and out by way of this drain. The court further found that the Scottdale Iron & Steel Company, Limited, a limited partnership association, was organized about 1887; that plaintiff was a member of said company and was duly elected one of its board of managers at the annual meeting of July 15, 1889, and was re-elected a manager of said company annually thereafter, and served and qualified in that capacity until the sale of the company's property to its present owners in 1900; that the Scottdale Iron & Steel Company, Limited, in 1887 purchased a tract of land containing 125 acres

adjoining and immediately north of the Home Works and Jacob Sherrick's surface land, and in 1888 conveyed said tract to A. S. Livengood, the plaintiff, reserving, however, all the stone, coal and other minerals under the part thereof adjoining Jacob Sherrick's land containing 107 acres, together with the right to mine and remove the entire amount and body of said coal, together with the right to make such openings as may be desirable for the ventilation and drainage of the mines, either on or beneath the surface of said lands without being in any way liable for any damage or injury which might be done to said lands. There was in the 107 acres of coal thus reserved by the Scottdale Iron & Steel Company, Limited, a mine which had been opened and operated by a former owner. The water in this mine had then been disposed of by pumping it to the surface, whence it flowed over the 125-acre tract, to which the plaintiff acquired title in 1888, and the ninety-two-acre tract of Jacob Sherrick into the run where the drain in dispute also discharges. The mines were not again operated until 1890, at which time preparations to resume work were begun and a contract was entered into by the Iron and Steel Company, Limited, with the plaintiff, Livengood, to mine and supply them with the coal required for their use; and all subsequent operations in this mine, until the sale to the American Sheet Steel Company, were conducted by Livengood, the plaintiff. At a meeting of the board of managers of the Iron and Steel Company, held October 17, 1890, the following motion was adopted : " That the officers of this company be empowered to negotiate and enter into an agreement with the Home Works for the best terms obtainable for the drainage of the water of the company's mines into the Home Works; " the plaintiff was present at this meeting and as a manager acquiesced in the action of the board. The mine at that time was flooded with water. Pursuant to this resolution an agreement was made with Stauffer & Wiley, the owners of the Home mine, and bore holes were driven at various places in the coal between the Scottdale Iron and Steel Company's mine and the Home mines, through which the water in the former passed into the latter where it was cared for by Stauffer & Wiley and conducted by ditches into and discharged through the drain in dispute. By this arrangement, which he as one of the board of managers of the Scottdale Iron & Steel Company had author-

ized, Livengood was enabled to begin mining operations under his contract with the company, he and the company were relieved of the burden of pumping the mines, and his surface lands were protected from any injury that might have resulted from the discharge thereon of the water pumped from the mines. This method of draining the Scottdale Iron & Steel Company's mines continued until 1895, in which year Livengood under a contract with the Scottdale Iron & Steel Company constructed a system of ditches in the company's mines whereby the water was collected at one point, from which an entry or cut-through was driven in the coal between the workings of the two mines, through which entry the water from the mines of the Scottdale Iron & Steel Company was conducted into those of Stauffer & Wiley and discharged by a single course into the drain. The water from the Scottdale Iron & Steel Company's mine has since been discharged through this entry into the Home mines of Stauffer & Wiley. The plaintiff received from the Iron and Steel Company as his compensation for the construction of this entry and system of ditches the sum of $1,318.35. The Scottdale Iron & Steel Company, of which the plaintiff was a manager, entered into an arrangement with the H. C. Frick Coke Company, in 1898, in pursuance of which an entry was driven through the coal between the two mines, through which the water passed from a part of the Frick Coke Company's mine into the Scottdale Iron & Steel Company's mine, and was conducted in ditches through said mine, to the Home Works mine of Stauffer & Wiley. The Scottdale Iron & Steel Company received from the Frick Coke Company a monthly compensation for this privilege. The plaintiff was a manager of the Scottdale Iron & Steel Company during the entire period covered by these various arrangements, had charge of its mining operations and knew exactly what had been done in the mines.

Jacob Sherrick died in 1895, and his daughter, Flora Stauffer, wife of Ely M. Stauffer, having purchased the interest of the other heirs, conveyed the ninety-two-acre tract above referred to, subject to the mining rights of Stauffer & Wiley, to A. S. Livengood, the plaintiff, by deed dated March 8, 1900.

The plaintiff had accurate knowledge as to what had been done with the drainage system of the three mines for almost ten years; he knew that the Frick Coke Company had been

granted a license to discharge part of the water of that mine into the mine of the Scottdale Iron & Steel Company, casting upon that mine the additional burden of taking care of such water; he knew that for over nine years the water of the mine of the Scottdale Iron & Steel Company had been discharged into the Home mine and on out through the drain in question; and he knew that an entry had been opened between the Iron and Steel Company's mine and the Home mine and that through that entry the waters of both the Frick mine and the Iron & Steel Company's mine had been discharged for about two years, passing into the Home mine and on out through the drain in question. Having this knowledge, he, on March 8, 1900, acquired title to the lands formerly of Jacob Sherrick, through which the drain ran, and his own chain of title gave him express notice of the character and extent of the rights, so far as shown by the records, of the various mine owners to pass water through this drain. This was the state of affairs when in April, 1900, Livengood, the plaintiff, as a manager of the Scottdale Iron & Steel Company, Limited, joined with his associates in the sale of the mine of that limited partnership to the American Sheet Steel Company, one of the defendants.

The mine which the plaintiff and his associates thus sold to the American Sheet Steel Company was subject to the burden of taking care of a part of the water from the Frick Coke Company's mine, which together with the water from the mine purchased was discharged, and apparently rightfully so, through an entry which opened into the mine of Stauffer & Wiley. The agreement under which the water from the Frick Coke Company's mine had been drained into the mine which was the subject of the sale was, so far as the evidence shows, in parol; the enjoyment of the license necessarily involved an expenditure of money by the Frick Coke Company, the licensee, and as the money had been expended and the agreement carried into execution, the license had become irrevocable: McKellip v. McIlhenny, 4 Watts, 317; Huff v. McCauley, 53 Pa. 206; Thompson v. McElarney, 82 Pa. 174; Harris v. Brown, 202 Pa. 16. This was a permanent burden upon the property which the plaintiff and his associates were selling, but the burden was apparently minimized and the value of the property greatly increased by the right which appeared to be appurtenant to the

mine to discharge the water which came from the Frick Coke
Company's works, as well as that which originated in the mine
which was the subject of the sale, through the entry leading
into the Home Works mine, as had for years been done and was
then being done by the plaintiff and his associates. If it be
conceded that the plaintiff, as successor to the title of Jacob
Sherrick, had a right to object to the drainage of the mine as it
was then conducted and that he would have been entitled to
have the discharge of the water in that manner restrained if
he had complained at the proper time, then, under the evidence in
this case, he was the only person who would have had any stand-
ing to object to the draining of the mine which was the subject
of the sale, in the manner in which it was then done. This
condition of affairs imposed upon A. S. Livengood the duty to
speak at that time and make known to the intending pur-
chasers, the American Sheet Steel Company, his right, as the
successor to the Sherrick title, to object to the continued
drainage of the mine in the manner in which it was then con-
ducted. The plaintiff elected to keep silent, and as one of the
managers of the Scottdale Iron & Steel Company, Limited, he
acquiesced in the sale, permitted the American Sheet Steel
Company to buy the property in ignorance of his private right,
and accepted his share of the purchase money. One who
knowingly suffers another to purchase land, under an erroneous
opinion of title, without making known his adverse claim, and
accepts for himself a part of the purchase money, shall not
afterwards be permitted to assert his right against such pur-
chaser. Silence will postpone a title when one knowing his
own right should speak out; and one led by such silence igno-
rantly and innocently to rest on his title, and invest money on
the faith of it, without timely warning, will be protected by
estoppel : Carr v. Wallace, 7 Watts, 394 ; LeFevre v. LeFevre,
4 S. & R. 241 ; Rerick v. Kern, 14 S. & R. 267 ; Lewis v.
Carstairs, 6 Wharton, 193 ; Swartz v. Swartz, 4 Pa. 353 ; Hill
v. Epley, 31 Pa. 331 ; Woods v. Wilson, 37 Pa. 379 ; Arnold
v. Cornman, 50 Pa. 361 ; Chapman v. Chapman, 59 Pa. 214 ;
Logan v. Gardner, 136 Pa. 588. The plaintiff is estopped to
question the right of the American Sheet Steel Company to
pass through the drain under his land the water which origin-
ates in its mine and that which flows in from the Frick Coke

Company's mine, in the same manner in which it was done at the time the American Sheet Steel Company purchased the mine from the plaintiff and his associates in the Scottdale Iron & Steel Company, Limited.   An incident of the right acquired by the American Sheet Steel Company is that the drain may be kept in repair and enlarged, from time to time, if necessary to accommodate the flow of water resulting from the operation of the mine which they purchased and that part of the Frick Company's mine which had acquired the right to drain through their property.

The decree of the court below is affirmed and the appeal is dismissed at the costs of the appellant.