## Bajor et ux. v. The Bell Telephone Company of Pennsylvania

*J. S. Hoffman*, for plaintiffs.

*J. B. H. Carter*, for defendant.

HAGAN, J., September 28, 1953.—Plaintiffs filed a complaint in equity, seeking to restrain defendant, Bell Telephone Company of Pennsylvania, from entering upon the premises of plaintiffs for the purpose of repairing certain communication equipment owned by defendant, and to compel defendant to remove this equipment from the premises.

The answer of defendant avers that the equipment had been installed and maintained on the premises of plaintiffs by virtue of an irrevocable license given to defendant by plaintiffs' predecessors in title.

A stipulation of facts was submitted to the court, and in pursuance thereof the chancellor makes the following

### Findings of Fact

1. Plaintiffs are the owners of premises 1539 E. Berks Street, Philadelphia, having acquired title thereto on January 22, 1952.

2. Defendant is a corporation organized and existing under the laws of Pennsylvania, and is engaged in the business of furnishing telephone service to its sub-

scribers; and defendant is required to maintain in the operation of its business and in the furnishing of its service, conduits, cables, terminal boxes, and other telephone equipment.

3. Defendant corporation in the operation of its business performs a public service to the community.

4. On March 20, 1920, defendant was granted permission (by an unrecorded written instrument executed by the then owners of the premises) to place and maintain its cable in the cellar of said premises, together with a junction box, cable and wires on the outside of the wall; and in reliance upon this written instrument, defendant installed the telephone equipment in and upon the premises at a cost to defendant of $175.

5. On January 18, 1927, defendant, by an unrecorded written instrument, was granted permission by the then owners of the premises, Albert and Catherine Beeboner, to place and maintain an aerial span of cable over the rear yard of the premises, together with the necessary rings and wires; and in reliance upon this written instrument defendant installed the telephone equipment in and upon the premises at a cost to defendant of $100.

6. Plaintiffs have given no express permission to defendant to continue the maintenance of the aforesaid telephone equipment of defendant in and upon said premises.

7. From the dates of installation of the telephone equipment by defendant to the institution of this action, the telephone equipment has been maintained on the premises by defendant.

8. Included in the telephone equipment maintained on the premises by defendant in pursuance of the aforesaid written instruments is a cable, which comes by underground conduit from a manhole situated in the street directly in front of the premises, northward under the sidewalk and into the basement thereof,

where it is encased in a metal pipe, three quarters of an inch in diameter, suspended from the basement ceiling, running under the house, thence through the wall under the dining room up the exterior wall across the back yard of the premises to a pole.

9. On or about November 13, 1951, trouble developed on the above cable, and defendant's employe entered the premises and ascertained that plaintiffs, in the course of remodeling the basement, had cut the cable at both ends.

10. Repairs were made to the cable by defendant at a cost to it of $53.88 and, at the request of plaintiffs, the cable was relocated along the east wall of the cellar, so that a false ceiling could be erected in the basement.

11. On or after November 27, 1951, plaintiffs requested defendant's agents to remove the cable from the premises, and defendant refused to comply with this request.

12. The cable of defendant which is maintained on the premises services residents in a surrounding area constituting a city block and presently involving 23 telephones.

13. The estimated cost of relocating this cable would be $865 and would necessitate the obtaining of a new right of way from some other property owner.

14. Since the time of the installation, the telephone equipment maintained by defendant on the premises of plaintiffs has been open and visible.

### Discussion

Before discussing the issues presented by this case on their merits, it would appear that there is grave doubt that a court of equity has jurisdiction over the subject matter of plaintiffs' complaint. Thus, in the case of Kurtz et al. v. Enterprise Telephone Co., 111 Pa. Superior Ct. 546, 548, in which the relief sought in equity was similar to that which plaintiffs are here seeking, it was held that the exclusive remedy of the

plaintiffs was at law in an action of ejectment; and the court dismissed plaintiffs' bill and directed that the case be transferred to the law side of the court.

However, as defendant has not raised the question of jurisdiction and as both plaintiffs and defendant desire to have the matter determined, the court will adjudicate the litigation as though it were being heard on the law side of the court without a jury.

The only question of law to be determined by the court is whether or not under the stipulated facts defendant has an irrevocable license to maintain its equipment on the premises of plaintiffs. Although the term "irrevocable license" is a contradiction, since by definition a license is at all times revocable, many States have allowed this hybrid hereditament to flourish. See 33 Am. Jur. 408 §103, 53 C. J. S. 816, §90(b).

Pennsylvania, by the year 1866, had clearly taken the position that so-called "irrevocable licenses" were a necessary adjunct to the law of real property. The adoption of the doctrine of "irrevocable licenses" was based upon a theory of estoppel. The leading case of Huff v. McCauley, 53 Pa. 206, contains a most succinct and illuminating restatement of existing Pennsylvania law and reviews many cases concerning irrevocable licenses, and at pages 208, 209, the court said:

"All these decisions rest upon the principle of estoppel. The parties cannot be placed in statu quo after the license has been executed, and work done, or money expended on the faith of it, and hence such a case is regarded as presenting a sufficient reason for a chancellor's interference to restrain any action of the licensor which would deprive the licensee of the benefit of the expenditure he was encouraged to make by the very party who seeks to make it fruitless."

Although the appellate court in the above cited case expressly declared that, in the protection of so-called

irrevocable licenses based upon the theory of estoppel, the courts of Pennsylvania "have gone beyond the common law, and beyond the rulings of courts of equity elsewhere", the case has never been overruled, and it is still the leading authority in this jurisdiction on the subject of irrevocable licenses.

In the brief submitted by counsel for plaintiff, it is stated that the written instrument of March 20, 1920 (see finding of fact 4) was signed only by the husband-owner. It appears, however, that the wife signed the instrument, but that her signature appears in the space reserved for witnesses.

In any event, the granting of a license does not require the execution of a writing by the licensor to make it effective. A parol license is valid and may ripen into an irrevocable license: Swartz v. Swartz, 4 Pa. 353; Lacy v. Arnett et al., 33 Pa. 169; Huff v. McCauley, supra; Thompson v. McElarney, 82 Pa. 174. These cases hold that, after a licensee had expended money upon the faith of a license or privilege to do something on the land of the licensor, the license becomes irrevocable. See also Alaska Coals, Inc., v. Petoske, 19 Northumb. 48; and Lieninger v. Goodman, 277 Pa. 75.

Plaintiffs contend that, conceding that the license may have bound the licensor who then owned the land, subsequent grantees of the land, without knowledge or notice, would not take subject to the license. This contention is without merit, for once an irrevocable license, the use of which is open and visible, is created, it is a servitude upon the land and is binding upon parties claiming under or through the original licensor: Thompson v. McElarney, supra. To hold otherwise would effectively destroy the efficacy of irrevocable licenses, which have flourished in this Commonwealth for over 100 years.

In Tide Water Pipe Co. v. Bell, 280 Pa. 104, 113, it is said:

". . . it is clear that the purchaser of land burdened with 'open, visible, continuous and permanent' pipe, telegraph and telephone lines, takes title subject to the burden, . . ."

See also Reading Company v. Maguire et ux., 82 D. & C. 599.

In the instant case, plaintiffs cannot contend that they were unaware of the existence of this irrevocable license. The exhibits attached to the stipulation clearly show the equipment and the wires leading to the cable and the cable itself to be open, visible and notorious, and thus the factual question has been resolved by the chancellor in defendant's favor. See finding of fact 13.

Also in considering the equities of the case, it is to be noted that plaintiffs stood by and, without protest, allowed defendant to expend money in making repairs to and relocating the cable.

Although decisions of other courts of common pleas are not here controlling, they may be very persuasive. In two analogous cases before sister courts of this county, it was decided that telephone equipment, installed and maintained on land pursuant to written permission, created an irrevocable license, since the writing was intended to induce and did induce the expenditure of money by the licensee. See Bell Tel. Co. v. Paul et al., C. P. No. 5, September term, 1951, no. 5226; Bell Tel. Co. v. Melso et al., C. P. No. 3, March term, 1941, no. 4033.

### Conclusions of Law

1. The licenses granted to defendant by the former owners of the premises in question became irrevocable after the expenditure of money by defendant in reliance upon the licenses.

2. The use of the irrevocable licenses by defendant having been open, visible and notorious, succeeding

grantees of the premises, including plaintiffs, acquired title under and subject to the servitude of the licenses.

*Decree Nisi*

And now, September 28, 1953, it is ordered, adjudged and decreed

1. That the complaint filed by plaintiffs be and the same is hereby dismissed;

2. That the costs of this proceeding be paid by plaintiffs, and

3. That the prothonotary is hereby directed to enter this decree and notify counsel for the parties of the filing of this adjudication, and inform them that unless exceptions are filed hereto within 20 days after notice of the filing of this adjudication, this decree shall become final.