**Hanna v. Hanna**

*Joel Friedman,* for plaintiff.
*Feeney & Guiliano,* for defendants.

## ADJUDICATION

DIGGINS, P. J., November 18, 1971.—This is an action in equity commenced September 29, 1970, and accompanied by an ex parte application for preliminary injunction, which was granted upon entry of security. A hearing was scheduled for October 2, 1970, and continued until October 9, 1970, when testimony was taken and the preliminary injunction was continued. By agreement of the parties and agreement of the court, the hearing was treated as final and thus the matter is ready for disposition.

We therefore make the following

## FINDINGS OF FACT

1. Plaintiff, Sheila C. Hanna, is an individual who, at the time of the trial, resided on the premises hereinafter described, and plaintiff, Thomas W. Hanna, is an individual and has been named as a plaintiff pursuant to the provisions of Pennsylvania Rule of Civil Procedure 2227(b) and is the son of defendants, Wilmer M. Hanna and Ruby Hanna, his wife.

2. Defendants, Wilmer M. Hanna and Ruby V. Hanna, his wife, are individuals residing at 1950 Lawrence Road, Haverford Township, Delaware County, Pa., which property is contiguous to that owned by plaintiffs.

3. Defendants, prior to May 1, 1962, were the owners of lots or tracts of ground described as follows:

"BEGINNING at a point in the center line of Lawrence Road (33′ wide) at the distance of two hundred sixty-two and sixty one-hundredths feet measured

north twenty-seven degrees fifty-six minutes twenty-nine seconds east from an angle in said Lawrence Road which point is north thirteen degrees fifty-eight minutes twenty-nine seconds east three hundred twelve and four one-hundredths feet from a point formed by the intersection of the said center line of Lawrence Road and the center line of West Chester Pike, thence along the said center line of said Lawrence Road north twenty-three degrees forty-eight minutes forty-nine seconds east one hundred fourteen and forty-one one-hundredths feet to a point, thence south sixty-five degrees eleven minutes eleven seconds east three hundred fifty and seventeen one-hundredths feet to a point, thence south sixty degrees thirty-seven minutes eight seconds west one hundred eighty-three and twenty-eight one-hundredths feet to a point, thence north sixty-two degrees three minutes thirty-one seconds west two hundred fifty-two and forty-four one-hundredths feet to the first mentioned point and place of beginning, and

"ALL THAT CERTAIN lot or piece of ground SITUATE in the Township of Haverford, County of Delaware, Commonwealth of Pennsylvania, bounded and described according to a Survey and Plan thereof made by Damon and Foster, Civil Engineers, Sharon Hill, Pennsylvania on the 16th day of June, A. D. 1945 as follows, to wit:

"BEGINNING at a point a corner of lands now or late of E. Richard Keller which point is North twenty-seven degrees fifty-six minutes twenty-nine seconds east one hundred twelve and sixty one-hundredths feet from an angle point in the center line of Lawrence Road thirty-three feet wide; said angle point being north thirteen degrees fifty-eight minutes twenty-nine seconds east two hundred fifty-two and four one-hun-

dredths feet from a point at the intersection of said center line of Lawrence Road with the northerly side of Old West Chester Pike one hundred twenty feet wide; THENCE north along the said Lawrence Road twenty-seven degrees fifty-six minutes twenty-nine seconds east one hundred fifty feet to a point; THENCE south sixty-two degrees three minutes thirty-one seconds east two hundred fifty-two and forty-four one-hundredths feet to a point; THENCE south sixty degrees thirty-seven minutes eight seconds west fifty-five and ninety-eight one-hundredths feet to a monument; THENCE south sixty degrees twenty-two minutes twenty-eight seconds west one hundred twenty-one and eighty-nine one-hundredths feet to a point; THENCE north sixty-two degrees three minutes thirty-one seconds west one hundred fifty-six and eighty-four one-hundredths feet to the first mentioned point and place of beginning.

"EXCEPTING AND RESERVING therefrom and thereout that portion of the above described premises which has heretofore been taken by the Pennsylvania Highway Department by condemnation in connection with the relocation of West Chester Pike as more particularly shown on Plans of the said Highway Department."

4. On May 1, 1962, defendants conveyed by deed of that date recorded in the office of the Recorder of Deeds, Media, Delaware County, Pa., in Deed Book No. 2108, page 372, the following portion of their lots or tracts of ground to plaintiff, Thomas W. Hanna:

"ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected:

"SITUATE in the Township of Haverford, County of Delaware, Commonwealth of Pennsylvania, described according to a plan of property for Wilmer M.

Hanna, made by G. D. Houtman and Son, Civil Engineers and Land Surveyors of Media, Pennsylvania on the 6th day of April, A. D. 1962, as follows, to wit:

"BEGINNING at a pipe on the northeasterly side of West Chester Pike (120 feet wide) which point is measured south 74 degrees, 26 minutes, 51 seconds east, one hundred eighty-two and twenty one-hundredths feet from a spike in the center line of Old Lawrence Road (33 feet wide); which last mentioned spike is measured north 27 degrees, 56 minutes, 29 seconds east, two hundred ten and forty-nine one-hundredths feet from an angle point therein; which angle point is measured north 13 degrees, 58 minutes, 29 seconds east, three hundred twelve and four one-hundredths feet from the center line of Old West Chester Pike (120 feet wide); thence extending from said point of beginning north 26 degrees, no minutes, 45 seconds east, one hundred fifty-seven and seventy-one hundredths feet to a pipe in land now or late of George Reed; thence extending along the same south 65 degrees, 11 minutes, 11 seconds east, one hundred seventy-nine and seventeen one-hundredths feet to an existing pin in land now or late of Richard Brogan; thence extending along the same south 60 degrees, 37 minutes, 8 seconds west, one hundred seventy-eight and seventy-two one-hundredths feet to a pipe on the northeasterly side of West Chester Pike; thence extending along the same north 74 degrees 26 minutes 51 seconds west, seventy-eight and eighty one-hundredths feet to the first mentioned point and place of beginning."

5. At the date of the conveyance by defendants to Thomas W. Hanna, their son, there existed no driveway across any portion of their lots or tracts connecting any portion of the lots or tracts with West Chester Pike.

6. Thomas W. Hanna had no written agreement regarding the driveway or road which extended across defendants' property.

7. On August 14, 1962, Thomas W. Hanna, one of the plaintiffs, intermarried with plaintiff Sheila C. Hanna.

8. On February 5, 1968, Thomas W. Hanna conveyed the lot or tract of ground with improvements erected thereon to himself and Sheila, his wife, by deed dated and recorded in the office of the Recorder of Deeds in Media in Deed Book No. 2296, page 560.

9. Thomas W. Hanna, plaintiff, constructed a house on his lot and after completion of the lot constructed a road or driveway from his lands across the lands of defendants to West Chester Pike. The driveway or roadway was completed some time after August 21, 1962.

10. Plaintiffs Sheila C. Hanna and Thomas W. Hanna were formerly man and wife, having been divorced by decree dated July 16, 1970, entered in the Court of Common Pleas of Delaware County in an action captioned "Sheila Ann Conroy Hanna v. Thomas W. Hanna, a/k/a Thomas Walter Hanna, no. 3246 of 1970."

11. On or about September 25, 1970, defendants willfully and intentionally obstructed and blocked the aforesaid driveway or passageway hereinabove referred to by erecting a certain chain across the driveway connected to metal posts, thereby preventing plaintiffs and all other persons from having ingress and egress to and from the premises owned by plaintiffs.

12. There was no agreement regarding the creation of an easement over defendants' land in the area where the driveway or roadway now exists.

13. Plaintiffs' property is bordered by West Chester Pike and has a grade above the surface of West Chester Pike of about 40 feet.

14. With reference to the aforementioned premises, there is presently pending an action for partition docketed as no. 10049 of 1970 in the Court of Common Pleas of Delaware County, Pa.

15. At the time of the severance of the ground owned by defendants, Wilmer M. Hanna and Ruby Hanna, his wife, in 1962, by grant of the premises to their son, Thomas W. Hanna, it was contemplated by all parties that a house would be erected thereon with ingress and egress to the house by means of a driveway.

16. Said driveway is the only existing means of ingress and egress from plaintiffs' property.

17. Said driveway or passageway is the only feasible means of ingress and egress between the public highway and plaintiffs' property because for both motor vehicle and pedestrian travel, no other means of access without traversing the lands of defendants can be constructed which would be economically realistic because of the terrain and the presence of rock.

18. Deprival by defendants of use of the driveway by plaintiffs constitutes a threat to the welfare of the occupants of the premises.

19. Deprival of the use of the driveway by defendants by plaintiffs renders the premises of plaintiffs unmarketable.

## DISCUSSION

The issue here is the right of plaintiffs to use a certain driveway which leads from plaintiffs' property to a public highway by traversing the premises owned by defendants. The two properties in question are located on the north side of West Chester Pike, defendants' property being on the northeast corner of West

Chester Pike and Lawrence Road, and plaintiffs' immediately adjacent to the east. Both properties were originally in the single ownership of defendants who are the parents of one of the plaintiffs, Thomas W. Hanna, and in 1962, defendants conveyed a portion of the premises to their son, Thomas W. Hanna, one of the plaintiffs, who, in turn, conveyed to himself and wife, Sheila, in 1968. At the time of the original conveyance, all parties contemplated the use of the property for residential purposes, and a single-family dwelling for the use of plaintiffs, Thomas W. Hanna and his wife, Sheila C. Hanna, was erected with sole access to it by means of a private driveway leading across the lands of defendants.

The premises conveyed by defendants to plaintiff, Thomas W. Hanna, abuts only on one public road, that is, West Chester Pike. It is agreed that plaintiffs' property along West Chester Pike is some 35 to 45 feet above the grade level of the public road and the testimony of an expert indicates that no feasible means of egress and ingress could be constructed to plaintiffs' property directly from West Chester Pike because of the terrain and the presence of rock, and this same witness declared that, in his opinion, the premises of plaintiffs was not generally marketable and could be sold only to defendants.

There was no trouble regarding the use of this road by Thomas and Sheila Hanna as long as they lived together as a married couple, but in July of 1970, plaintiff, Sheila C. Hanna, divorced plaintiff, Thomas W. Hanna, and in September of 1970, plaintiff, Thomas W. Hanna, filed a complaint in equity seeking to partition the premises owned by him and his former wife, plaintiff, Sheila C. Hanna. Then, on or about September 25, 1970, defendants, who are the parents of Thomas W. Hanna, obstructed the use of the drive-

way by erecting a chain across it connected by metal posts, which required the present action, and deprived plaintiff, Sheila C. Hanna, and her minor children, who were residing in the premises, (plaintiff, Thomas W. Hanna, having left) of vehicular ingress and egress, constituting a clear and present danger, because, among other things, fire equipment could not reach the house, nor could ambulances, tradesmen or trash collectors. The issue before the court then is whether or not the evidence establishes the right of user of driveway in plaintiffs as a way of necessity.

Defendants contend that the easement, if it exists at all, does not exist by virtue of any right and, therefore, if such easement exists, it must exist because of some legal concept which provides for an easement by implication or by necessity; and further contend that an easement by necessity is an implied servitude on the land and must exist at the time of severance of one tract from another, and must be absolute in the sense that there are no other means of ingress and egress except across the lands of one's neighbors, and that if any other practical way of access to the land exists, even if less convenient, then a way of necessity does not exist; and defendants further contend that because the roadway was not in existence at the time of the original severance of the tract in 1962, there can be no easement by implication.

It seems to the chancellor, however, that the doctrine relating to easements of necessity is founded on the fact that it shall not be assumed that by a conveyance it was intended to render the property retained or conveyed unusable and that when property is conveyed and is so situated that access to it from the highway cannot be had except by passing over the remaining lands of the grantors, then the grantee is entitled to a way of necessity over the lands of the

grantor: Commonwealth v. Burford, 225 Pa. 93, 98; Borstnar v. Allegheny County, 332 Pa. 156, 159; Restatement, Property, section 476, comment (g). The general requirement for the creation of such an easement by implication is: (1) the land must have been in single ownership, and (2) by reason of the circumstances under which a conveyance of part of it is made, the law will imply an easement of necessity: Restatement, Property, section 474. A way of necessity is but one of the class of easements of necessity which the law recognizes: Philadelphia Steel Abrasive Company v. Gediske Sons, 343 Pa. 524. This has been the law in Delaware County at least since 1891, as expressed in the case of Mullen v. Hibberd, 5 Del. Co. R. 10 (1891). In that case, Hibberd sold Mullen a piece of ground which had no possible ingress or egress without crossing lands of strangers or the grantor. At the time of the sale, it was not known between the parties that Mullen intended to use the property as a water works, and he attempted to lay conduit pipes over the grantor's land, which was resisted, and the court, President Judge Clayton, held that a right-of-way, including the right to lay conduit pipes over the land of Hibberd, was to be implied.

The only difference between that case and the present case is that in the Mullen v. Hibberd case, the property conveyed was entirely surrounded by the lands of the grantor or others. In our case, there is frontage of plaintiffs' property on West Chester Pike, which raises the question of what degree of necessity is required for an easement to be implied. The grade of the land, being some 35 to 45 feet above the highway over rock formation, in the opinion of the chancellor is for all practical purposes insurmountable by plaintiff, and the law does not require absolute necessity. The rule in that regard is "if the land can be used

without an easement but cannot be used without disproportionate effort and expense, an easement may still be implied in favor of either the conveyor or the conveyee on the basis of the necessity alone without reference to prior use. If the necessity of an easement is such that without it land cannot be effectively used, nothing less than explicit language in the conveyance negating the creation of an easement will prevent its implication": Restatement, Property, section 476, comment (g). Thus, we have a relative concept, and the determining factor in such cases is the relative cost of such use to the value of the property: Condry v. Laurie, 184 Md. 317, 41 A. 2d 66, 68 (1944); Littlefield v. Hubbard, 124 Me. 299, 128 Atl. 285, 287 (1925).

It seems abundantly clear to the chancellor that plaintiffs' property is not marketable without the use of the driveway, presently constructed partly of concrete and partly of macadam, clearly intended to be permanent and recognized so by all parties to this action; and it is equally clear that the construction of a driveway on plaintiffs' own property over the high rocky elevation to West Chester Pike, if possible, would be uneconomic in relation to the value of the property.

Defendants in their pleading contend that the use of the driveway is by license and not easement, but, in the opinion of the chancellor, the record fails to support such a contention. Even so, under the situation here, such license is now irrevocable because the doctrine of irrevocable license rests on the principles of estoppel and has been recognized since time immemorial as the law in the Commonwealth of Pennsylvania; and the rule is that where a license not specifically restricted for the enjoyment of certain privileges in the land of another is obtained, with or without consideration, and, as a consequence, the licensee expends money for the erection of improvements or

other purposes on the faith of the license, it becomes irrevocable: Thompson v. McElarney, 82 Pa. 174, 177, 178; Huff v. McCauley, 53 Pa. 206, 208, 209; Wenrich v. Miller, 10 Leb. Leg. J. 46 aff. 418 Pa. 384, 1965.

In the instant case, all parties to the original conveyance contemplated the construction of a residence and, in fact, such construction took place and access to the house was by the driveway across defendants' land; and no other permanent means of ingress or egress was ever contemplated.

Clearly, what happened here was that defendants conveyed the land to their son so that he, contemplating marriage, would have a site upon which to erect a martial domicile, and this is precisely what was done, including the erection of the present driveway across the lands of defendants; and nothing happened regarding the use of that driveway until marital difficulties between the son and his wife arose and the divorce followed and thereafter the son of defendants herein sought partition. Clearly, if this driveway were to be permanently closed off, the value of the property would be materially reduced, if not destroyed, which would inure to the benefit of the plaintiff son. It is to be noted that he did not join in this action. His wife brought the action, and by the use of the rules of common pleas fortuitously available to her, joined her former husband in order to give her standing and an opportunity to protect her interests. Quite clearly, it seems to the chancellor that should defendants prevail and the property be disposed of by partition, probably the only purchaser would be plaintiff Thomas W. Hanna, and thereafter for his convenience and aggrandizement, the way in issue here would be restored. We think that in relation to this driveway and its closing off, there is collusion between grantors and their son, Thomas W. Hanna, and we think that law

and equity provides a remedy. The injunction heretofore entered must be made permanent and we make the following

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the parties and the subject matter of the within action.

2. Plaintiff, Sheila C. Hanna is without an adequate remedy at law.

3. Plaintiffs have established a right of user of the extant driveway as a way of necessity.

4. Defendants are permanently enjoined from interfering with the quiet enjoyment of the driveway by plaintiffs as a means of ingress and egress from the premises owned by plaintiffs.

Therefore, we make the following

## DECREE NISI

And now, to wit, November 18, 1971, defendants, Wilmer M. Hanna and Ruby Hanna, his wife, be and they are permanently enjoined and restrained from obstructing or causing to be obstructed in any manner or form access to plaintiffs' premises, a description of which is attached to this order and incorporated herein by reference, including plaintiffs' use of a certain driveway form West Chester Pike to plaintiffs' premises more specifically described in plaintiffs' complaint, and security hereinbefore entered by plaintiff, Sheila C. Hanna, be and the same is hereby discharged.

## ORDER

The prothonotary is directed to give notice immediately to the parties or their attorneys of record of the filing of the above decree nisi and, if no exceptions

be filed thereto within 20 days after the service of such notice, to enter the said decree nisi as a final decree.

## OPINION SUR EXCEPTIONS TO ADJUDICATION

DIGGINS, P. J., May 1, 1972.—The above case arose by way of ex parte application for preliminary injunction, which was granted. On October 9, 1970, testimony was taken and by argument of counsel was considered as final. Thereafter, on November 18, 1971, the chancellor, with the approval of the whole court, filed an adjudication with findings of fact, conclusions of law and decree nisi, permanently enjoining and restraining defendants from obstructing or causing to be obstructed in any manner the premises described therein, including plaintiffs' use of a certain driveway from West Chester Pike to plaintiffs' premises as described, and discharged plaintiffs' surety.

Exceptions thereto were filed citing seven alleged errors in findings of fact and three objections to the conclusions of law and an exception to the decree nisi. These exceptions were listed for argument specially before a court en banc, Diggins, P. J., Chancellor, Sand, J. Both counsel waived arguments and submitted the matter on briefs, and the case is ripe for final adjudication.

The court finds no merit whatever in the exceptions as to the findings of fact, conclusions of law and decree nisi and makes the following

## ORDER

And now, to wit, May 1, 1972, all exceptions to findings of fact, conclusions of law and decree nisi be and they are hereby dismissed.